GREGORY ABRAMS, Plaintiff-Appellant. v. WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., *et al.*, Defendants-Appellees.

First District (5th Division) No. 1—98—1947

Opinion filed August 6, 1999.

Law Offices of Stephen H. Dabrowski, of Chicago (Stephen H. Dabrowski and Jessica B. Tucker, of counsel), for appellant.

Starr & Rowells, of Chicago (Timothy L. Rowells, of counsel), and Legal Department Watchtower Bible & Tract Society of New York, Inc., of Patterson, New York (Mario F. Moreno, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Gregory L. Abrams, once a member of the Jeffrey Valley Congregation of Jehovah's Witnesses, brought suit against individual members of that congregation and the Watchtower Bible and Tract Society of New York (sometimes collectively defendants), alleging that defendants conspired to remove him from the congregation by causing two female members to accuse him falsely of grave and serious sins. After the circuit court dismissed counts contained in his original and two amended complaints, with leave to amend, plaintiff filed his third amended complaint. Upon defendants' motion, the court dismissed plaintiff's third amended complaint. Plaintiff appeals, claiming that the circuit court erred in dismissing his third amended complaint and in dismissing counts contained in his first and second amended complaints. For reasons that follow, we affirm.

On August 8, 1995, plaintiff brought his original complaint against defendants, alleging intentional infliction of emotional distress, negligent infliction of emotional distress, fraud, defamation and invasion of privacy. As the bases for his claims, plaintiff alleged that in 1979, he "officially" joined the Jeffrey Valley Congregation of Jehovah's Witnesses, after years of attending services there, and from 1979 through early 1991, he was "very active" in the congregation, performing services and participating in activities. Although not employed by the congregation, plaintiff was rewarded with "promotions" up to the position of "Ministerial Servant" within the congregation, one position below that of "Elder," the highest-ranking position. Sometime in December 1990, Stacy Cross, another member of the congregation, allegedly falsely accused plaintiff of "serious" and "grave" sins.[1] Cross brought her claims before the "Body of Elders," the governing body of the congregation. In February 1991, another member of the congregation, Lisa Harris-Temple, submitted a letter to the Body of Elders also allegedly falsely accusing plaintiff of "serious sins."

Plaintiff's complaint asserts that both Harris-Temple and Cross had been solicited by members of the Body of Elders to fabricate the allegations, in an attempt to prevent him from becoming an Elder and with the intent to destroy his "good name and reputation in the community." To that end, the Body of Elders asked Watchtower Bible and Tract Society of New York to publish the allegations against plaintiff, made a "public" statement about his "sins" to the congregation, removed him from his position as Ministerial Servant, cancelled his subscription to the national publication "Watchtower," demoted him, prevented him from taking part in congregational activities, and "made numerous misstatements and misrepresentations to [p]laintiff and others in furtherance of their scheme." Plaintiff further alleged in his original complaint that he "suffered extreme and severe emotional distress for which [he] required professional psychological treatment" and his "personal livelihood and real estate appraisal business suffered and was damaged" as a result of defendants' actions.

Responding to plaintiff's original complaint, defendants filed a "combined" motion to dismiss pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1996) (section 2—615 and section 2—619)). Defendants raised the ecclesiasti-

---

[1] "Serious" or "grave" sins are defined by the Jehovah's Witnesses as "offenses serious enough to merit one's expulsion from the congregation" and may include "fraud, slander, fornication, adultery, homosexuality, blasphemy, apostasy, idolatry, and similar grave and gross sins."

cal abstention doctrine as a bar to the circuit court's subject matter jurisdiction and further asserted that plaintiff's complaint failed to state a cause of action. Alternatively, defendants argued that the statute of limitations barred plaintiff's defamation and invasion of privacy claims. On October 10, 1996, the circuit court dismissed with prejudice those counts alleging negligent infliction of emotional distress. Further, the court struck the remainder of plaintiff's complaint, but granted him leave to amend.

On November 25, 1996, plaintiff filed an amended complaint, detailing, with greater specificity, the allegedly false accusations made against him by Cross and Harris-Temple: Cross had accused him of "calling her on the telephone when her husband was not home, coming over to her house and commenting that her dress looked nice"; Harris-Temple had accused him of "commenting that the colors of her dress and sweater went well together." Plaintiff re-alleged that these false accusations were solicited by the Body of Elders in an attempt to destroy him personally and professionally and his affiliation with the congregation. His amended complaint articulated five counts of intentional infliction of emotional distress, five counts of defamation and five counts of invasion of privacy.

Defendants moved to dismiss plaintiff's amended complaint, again invoking the ecclesiastical abstention doctrine. On May 29, 1997, the circuit court dismissed plaintiff's amended complaint, finding the facts alleged did not support a cause of action for intentional infliction of emotional distress. The court again granted plaintiff leave to amend, however, advising him to "keep it secular" and to "plead a fraud or conspiracy."

On June 26, 1997, plaintiff filed his second amended complaint, alleging the same facts as in previous complaints and seeking recovery for one count of "conspiracy to defame," three counts of defamation, one count of "conspiracy to invade privacy" and one count of "conspiracy," based upon breach of fiduciary duty. Defendants filed motions to dismiss plaintiff's second amended complaint, raising, *inter alia*, the statute of limitations and the ecclesiastical abstention doctrine. On December 3, 1997, the circuit court granted defendants' motion, dismissing plaintiff's defamation and "conspiracy to invade privacy" claims as time-barred, but allowing plaintiff leave to amend the remainder of his complaint.

A third amended complaint was filed by plaintiff on December 31, 1997, which contained a single count entitled, "Conspiracy." Plaintiff alleged the same facts as in previous complaints and also that he relied upon statements made by Otis Temple, a member of the Body of

Elders, who "falsely represented to [p]laintiff that there was nothing [plaintiff] could do to clear his name or otherwise appeal the wrongful conduct of the Defendants." Plaintiff further alleged that the acts of which he complained were in furtherance of the alleged conspiracy and "committed by the Body of Elders with knowledge of the falsity of the accusations or with a reckless disregard of such falsity and thus, with actual malice."

Defendants moved to dismiss plaintiff's third amended complaint, repeating the ground, *inter alia*, that plaintiff's claim was barred by the ecclesiastical abstention doctrine. Prior to ruling, the circuit court noted that plaintiff's third amended complaint alleged "no underlying tort" and, although the third amended complaint alleged a "conspiracy," it was not specific as to its nature. At the hearing on this motion, plaintiff's attorney explained to the court that plaintiff was alleging a conspiracy to defraud.

On April 22, 1998, the circuit court dismissed with prejudice plaintiff's third amended complaint in its entirety. Finding that plaintiff's third amended complaint failed to allege "an underlying tort," the court dismissed the complaint. The court further held that the "demotion and the expulsion [of plaintiff] required a doctrinal decision by the [E]lders" and, "even if they knew that these statements were true, these statements in and of themselves are not right or wrong."

Plaintiff purports to appeal not only from the circuit court's April 22, 1998, order dismissing his third amended complaint, but "from previous Orders of the Court regarding Defendants' Motions to Dismiss, in favor of the Defendants."

■ A section 2—615 motion challenges the legal sufficiency of the complaint and admits all well-pleaded facts together with all reasonable inferences which can be drawn from those facts. *American Health Care Providers, Inc. v. County of Cook*, 265 Ill. App. 3d 919, 922, 638 N.E.2d 772 (1994); *Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 634, 662 N.E.2d 1377 (1996). The issue to be considered by such a motion is whether significant facts are contained in the pleadings, which, if established, would entitle the complainant to relief. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86, 672 N.E.2d 1207 (1996). No cause of action will be dismissed on the pleadings unless it appears clearly that no set of facts can be proved that will entitle the complainant to recovery. *Bryson*, 174 Ill. 2d at 86-87. Orders granting or denying such motions are subject to *de novo* review. *Peter J. Hartmann Co. v. Capital Bank & Trust Co.*, 296 Ill. App. 3d 593, 600, 694 N.E.2d 1108 (1998).

## I

Plaintiff initially claims that the circuit court erred in dismissing his third amended complaint because the ecclesiastical abstention doctrine does not bar his claims against defendants; the facts alleged in his third amended complaint stated a cause of action under a "conspiracy to defraud theory"; and the statute of limitations does not bar his recovery.

■ The first amendment to the Constitution of the United States (U.S. Const., amend. I) bars any secular court from involving itself in the ecclesiastical controversies that may arise in a religious body or organization: "it would be a vain consent and would lead to the total subversion of *** religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed." *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 729, 20 L. Ed. 666, 676-77 (1872). Where resolution of ecclesiastical disputes cannot be made without extensive inquiry by civil courts into religious law and polity, "the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them." *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709, 49 L. Ed. 2d 151, 162, 96 S. Ct. 2372, 2380 (1976).

Where no consideration of religious doctrine is involved, however, the "neutral principles of law" approach may be applied, permitting a court to interpret provisions of religious documents involving property rights and other nondoctrinal matters, to the extent that the analysis can be done in purely secular terms. See *Jones v. Wolf*, 443 U.S. 595, 61 L. Ed. 2d 775, 99 S. Ct. 3020 (1979). In employing the "neutral principles" approach, the civil court "determines property ownership by applying general principles of law, examining local church charters, State statutes governing the holding of church property and other pertinent documents." *North American Old Roman Catholic Church v. Bernadette*, 253 Ill. App. 3d 278, 284-85, 627 N.E.2d 1094 (1992); see also *Gabriel v. Immanuel Evangelical Lutheran Church, Inc.*, 266 Ill. App. 3d 456, 460, 640 N.E.2d 681 (1994).

The threshold question in the instant case, therefore, is whether resolution of plaintiff's claims can be attained without inquiry into the religious principles and doctrine of the Jehovah's Witnesses. The gist of plaintiff's third amended complaint was that the Body of Elders, individually and as a group, "conspired to prevent Plaintiff from becoming an Elder, [to] remove him from his current responsibilities and [to] force him to leave the organization." In furtherance of the

conspiracy, the Body of Elders is alleged to have solicited false accusations from Cross and Harris-Temple in pursuing their actions against plaintiff. Plaintiff further alleged that he detrimentally relied upon the statement of Otis Temple, a member of the Body of Elders, who "falsely represented to Plaintiff that there was nothing [he] could do to clear his name or otherwise appeal the wrongful conduct of the Defendants." Plaintiff's third amended complaint also alleged that Watchtower Bible and Tract Society of New York "knew, consented, ratified, participated in, or otherwise condoned the conspiracy."

■ Plaintiff asserts that the circuit court erred in finding that, to reach the merits of the claims set forth above, it was necessary to review ecclesiastical issues, because the Body of Elders relied upon fabrications to divest him of his church duties, which does not implicate religious doctrine or internal church procedures. A review of his third amended complaint, however, leads to the conclusion that the circuit court would have been compelled to examine and apply the religious doctrines of Jehovah's Witnesses in order to reach a determination, as the following analysis demonstrates.

The alleged conspiracy began with what plaintiff characterized as "false accusations" of "grave" and "serious" "sins," as defined by the Jehovah's Witnesses. In order to determine whether the alleged statements constituted sufficient grounds for plaintiff's removal, the circuit court clearly would have had to analyze and apply ecclesiastical doctrines to the civil case. Plaintiff contends further that the conspiracy continued when the Body of Elders "defrauded" him "because he truthfully believed that the system would exonerate him and expose the conspiracy but he was falsely told that there was nothing he could do." In order to determine whether defendants "defrauded" plaintiff, the court would have had to scrutinize religious procedures of the Jehovah's Witnesses and determine whether they were followed properly by the Body of Elders.

Plaintiff nevertheless contends that his complaint, alleging fraud, may be reviewed by a civil tribunal because "courts have found that religious organizations are not protected by the First Amendment against liability for fraud, conspiracy, undue influence, racketeering and intentional infliction of emotional distress." Plaintiff's argument, however, fails.

The genesis of plaintiff's contention can be found in *Gonzalez v. Roman Catholic Archbishop of Manila*, 280 U.S. 1, 74 L. Ed. 131, 50 S. Ct. 5 (1929), where the Court stated, in *dictum*, "[i]n the absence of fraud, collusion, or arbitrariness, the decisions of the proper church tribunals on matters purely ecclesiastical, although affecting civil rights, are accepted in litigation before the secular courts as

conclusive." *Gonzalez*, 280 U.S. at 16, 74 L. Ed. at 137, 50 S. Ct. at 7-8. As later recognized in *Milivojevich*, however, the "absence exceptions" noted in *Gonzalez* never have been accepted fully by the Supreme Court. In fact, *Milivojevich* explicitly repudiated the arbitrariness exception; as to the other exceptions, the court did not say "whether or not there is room for 'marginal civil court review' under the narrow rubrics of 'fraud' or 'collusion' when church tribunals act in bad faith for secular purposes." *Milivojevich*, 426 U.S. at 713, 49 L. Ed. 2d at 165, 96 S. Ct. at 2382. *Milivojevich* merely leaves open, but does not endorse, the possibility that *limited* review might be available in cases of fraud or collusion.

In any event, even if such an exception exists in the circumstance of fraud, review of the alleged "fraud" in the instant case would run counter to the principles of ecclesiastical abstention. The "fraud" alleged in plaintiff's third amended complaint centered upon the Body of Elders' misrepresentations to plaintiff regarding the manner and means of appeal, clearly invoking Jehovah's Witnesses' religious doctrine and organization. Civil court reviews of such ecclesiastic and religious decisions, particularly those pertaining to the membership or hiring and firing of clergy, are in themselves an "extensive inquiry" into religious law and practice and, therefore, forbidden by the first amendment. See *Milivojevich*, 426 U.S. 696, 49 L. Ed. 2d 151, 96 S. Ct. 2372. Maintaining a suit such as plaintiff's would produce an investigation and review of matters of ecclesiastical administration and government, which could produce, by its coercive effect, only the very opposite of that contemplated by the first amendment.

Plaintiff insists, however, that the "neutral principles" approach allows for consideration of his "fraud" complaint. Although that approach has been judicially accepted in Illinois (see *Aglikin v. Kovacheff*, 163 Ill. App. 3d 426, 516 N.E.2d 704 (1987)), it has been used primarily for disputes over ownership of church property that are determinable without resort to review of purely ecclesiastical decisions concerning faith or doctrine. See, *e.g.*, *Clay v. Illinois District Council of the Assemblies of God Church*, 275 Ill. App. 3d 971, 979, 657 N.E.2d 688 (1995). Here, no such "neutral" approach is possible.

Plaintiff's third amended complaint unquestionably involved ecclesiastical principles and doctrines, precluding requisite subject matter jurisdiction in the instant controversy. See *Williams v. Palmer*, 177 Ill. App. 3d 799, 804, 532 N.E.2d 1061 (1988). Accordingly, the circuit court did not err in dismissing plaintiff's third amended complaint.

## II

Plaintiff next asserts that the circuit court erred in dismissing

counts contained in his amended complaint and second amended complaint. Specifically, plaintiff maintains that the court erred in (1) dismissing the intentional infliction of emotional distress counts in his amended complaint; and (2) dismissing, as time-barred, the defamation and invasion of privacy counts in his second amended complaint.

■ A plaintiff desiring to preserve for appeal the previous dismissal of claims either must stand on the dismissed counts and challenge the ruling at the appellate level or reallege or incorporate the dismissed counts in subsequent complaints. See *Boatmen's National Bank v. Direct Lines, Inc.*, 167 Ill. 2d. 88, 99, 656 N.E.2d 1101 (1995); *Doe v. Roe*, 289 Ill. App. 3d 116, 120, 681 N.E.2d 640 (1997). A party who files an amended complaint waives any objection to the circuit court's ruling on the former complaint. *Boatmen's National Bank*, 167 Ill. 2d at 99; *Doe*, 289 Ill. App. 3d at 119. Where an amended pleading is complete and does not refer to or adopt the prior complaint, the earlier complaint ceases to be a part of the record, being in effect abandoned and withdrawn. *Pfaff v. Chrysler Corp.*, 155 Ill. 2d 35, 61, 610 N.E.2d 51 (1992); *Funes v. B&B Equipment, Inc.*, 282 Ill. App. 3d 272, 274-75, 668 N.E.2d 54 (1996). Once an amended pleading has been filed, allegations of error in dismissing a prior pleading are waived. *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 153, 449 N.E.2d 125 (1983).

■ In the case *sub judice*, plaintiff abandoned and withdrew the claims of intentional infliction of emotional distress contained in his amended complaint when he failed to reallege or incorporate those allegations in his second amended complaint. Likewise, plaintiff abandoned his defamation and invasion of privacy counts in his second amended complaint when he failed to reallege or incorporate those allegations in the "conspiracy" count of his third amended complaint. Review of his amended and second amended complaints is waived. See *Adamcyzk v. Forest Preserve District*, 151 Ill. App. 3d 320, 323, 502 N.E.2d 1197 (1986); *Kievman v. Edward Hospital*, 122 Ill. App. 3d 187, 460 N.E.2d 901 (1984).

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

GREIMAN and THEIS, JJ., concur.