THIRD DIVISION
August 29, 2007

No. 1-06-1710

| | | |
|---|---|---|
| WILLIAM REED, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 03CH8154 |
| RETIREMENT BOARD OF THE FIREMAN'S | ) | |
| ANNUITY AND BENEFIT FUND OF | ) | |
| CHICAGO, | ) | The Honorable |
| | ) | Richard J. Billik, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff William Reed sustained a back, neck and shoulder injury while working for the

Chicago Fire Department (the CFD) as a firefighter and subsequently sought duty disability

benefits from defendant, the Retirement Board of the Firemen's Annuity and Benefit Fund of

Chicago (the Board), pursuant to section 6-151 of the Illinois Pension Code (the Code) (40 ILCS

5/6-151 (West 2004)).  Reed was denied benefits when the Board found that he was not disabled,

and subsequently sought and was denied reinstatement by the CFD.  Thereafter, Reed filed suit in

the trial court seeking administrative review of the Board's decision and seeking a writ of

*mandamus* ordering the CFD reinstate him or, in the alternative, ordering the Board to grant him

disability benefits.  While the complaint was initially dismissed with prejudice, Reed was later

granted leave to replead.

Thereafter the Board refused to allow Reed to file an application for ordinary disability

benefits pursuant to section 6-152 of the Code (40 ILCS 5/6-152 (West 2004)).  Reed filed an

amended complaint in *mandamus* seeking an order that the Board grant him an ordinary disability

hearing. The trial court entered summary judgment in the Board's favor on the amended complaint, finding that the issue of Reed's disability had already been decided by the Board and that mandamus was an inappropriate remedy in this case. On appeal, Reed contends that the trial court erred in dismissing his original complaint and in entering summary judgment in favor of the Board on his amended complaint.

We find that Reed has waived his arguments regarding the propriety of the dismissal of his original complaint and that, waiver aside, his arguments are without merit. We further find that in denying Reed the right to file an application seeking ordinary disability benefits, the Board violated Reed's procedural due process rights. Accordingly, we reverse the trial court's entry of summary judgment in the Board's favor on Reed's amended complaint and remand to the trial court with instructions to enter summary judgment in favor of Reed in accordance with the opinion below.

Reed was injured on June 2, 2000, while on duty as a Chicago firefighter and subsequently received one year of paid medical leave. Reed was then dropped from payroll on June 2, 2001. Reed sought reinstatement with the CFD. Reed was examined by multiple medical specialists including the City of Chicago's medical officer, Dr. Isaac Morcos, who determined that Reed was disabled. Reed was consequently denied reinstatement.

On April 5, 2001, Reed applied for duty disability benefits from the Board. On May 25, 2001, Dr. Morcos certified Reed's disability to the Board. On that same day, Dr. Morcos sent a letter to Dr. George Motto, physician consultant to the Board, discussing Reed's injuries, Reed's

consultation with multiple medical specialists and his conclusion that Reed was unable to perform his firefighter duties in full.

Following additional examinations by physicians, including Dr. Motto, the court held a hearing on Reed's request for duty disability benefits. During the hearing, the Board heard testimony and received medical records regarding Reed's condition. Several physicians found that Reed's subjective complaints of disability were not supported by their objective findings. Reed, himself, testified that most of the symptoms he suffered after his injury had been resolved and that he was able to engage in everyday activity, including maintaining a rental building he owned. Dr. Motto, who had reviewed all medical records received by the Board, examined Reed and heard all testimony presented to the Board, testified that Reed was capable of performing his duties as a firefighter and was not disabled.

On February 20, 2002, the Board entered an order finding that Reed did not suffer from any neurological or physical disability that would impair his ability to perform his duties as a firefighter and was, therefore, not entitled to duty disability benefits arising from his June 2, 2000, injury. The Board's order provided that Reed's "current condition is essentially normal and would allow him to return to active duty with the [CFD]."

In a letter addressed to Reed from the Board on February 26, 2002, Reed was informed that he must file for administrative review of the Board's decision within 35 days.

On March 12, 2002, Reed sought reinstatement as a firefighter with the CFD. After several medical examinations and tests, on April 8, 2003, the CFD informed Reed that he would

not be reinstated as a firefighter because it had found that he was "unable to perform the essential functions of a firefighter."

Reed subsequently filed a complaint in the trial court on May 9, 2003. Count I of the complaint sought administrative review of the Board's finding that Reed was not disabled. Count II, against the City of Chicago and the Board, asked that the court enter a *mandamus* order that the CFD reinstate Reed as a firefighter or, in the alternative, that the Board provide Reed with disability benefits.

The Board moved to dismiss the original complaint for lack of subject matter jurisdiction. Meanwhile, Reed filed a motion asking that the trial court remand the cause to the Board with directions that the Board conduct an ordinary disability benefits hearing pursuant to section 6-152 of the Code.

On January 16, 2004, the trial court granted the Board's motion to dismiss with prejudice and denied Reed's motion to remand. The court reasoned that it lacked subject matter jurisdiction to consider Reed's original complaint because Reed failed to file for administrative review within 35 days of the Board's decision. The court also found that Reed's *mandamus* request in count II was an improper remedy because it asked the court to direct the Board to perform a discretionary duty. The court denied Reed's motion to remand because, since it lacked subject matter jurisdiction to decide Reed's claim for administrative review, it was further precluded from considering the merits of that motion.

In its January 16, 2004, order the court suggested that Reed request an ordinary disability benefits hearing pursuant section 6-152 of the Code directly from the Board.

On January 20, 2004, Reed wrote a letter to the Board asking that the Board grant him an ordinary disability benefits hearing. Specifically, Reed asked that the Board send him application materials for ordinary disability benefits. In his letter, Reed noted that the Board, during its earlier hearing and in its February 20, 2002, decision, had not considered whether Reed was entitled to ordinary disability benefits.

On February 24, 2004, the Board refused Reed's request to apply for ordinary disability benefits. The Board noted that Reed's claim for duty disability benefits arising from the same injury was pending in the trial court and stated that, "[u]ntil that claim is finally adjudicated[,] the Retirement Board will defer any hearing" on the request. The Board further noted that its letter was not a decision with respect to Reed's entitlement to ordinary disability benefits.

Meanwhile, Reed filed a motion in the trial court on February 10, 2004, to reconsider the January 16, 2004, dismissal of his original complaint.

In May 2004, Reed was reinstated by the CFD and the City of Chicago was dismissed as a party to the case. The City of Chicago is not a party to this appeal.

On July 29, 2004, the court denied Reed's motion to reconsider but allowed him to file an amended complaint.

Accordingly, on August 31, 2004, Reed filed an amended complaint asking that the trial court enter a writ of *mandamus* ordering the Board to grant Reed an ordinary disability benefits hearing under section 6-152 of the Code. The amended complaint alleged that Reed was injured on June 2, 2000, in the course of duty and that Reed requested a hearing on ordinary disability benefits but was erroneously denied a hearing on February 24, 2004. Specifically, Reed alleged

that the Board had "violated the due process and fair hearing requirements for administrative agencies." According to Reed's attorney, an affidavit found in the record was attached to the amended complaint. In the affidavit, Reed averred that before he was denied reinstatement by the CFD on April 8, 2003, he repeatedly called the CFD regarding the status of his evaluations and was told to be patient and wait for a final decision from the CFD. Reed also averred that Deputy Commissioner Jackson, the CFD's second-in-command, advised Reed to wait for a final decision and refused to answer his questions regarding whether Reed had been, in effect, fired.

Thereafter, on February 1, 2005, Reed filed a notice appealing the trial court's dismissal of his original complaint on January 16, 2004, and denial of his motion to reconsider on July 29, 2004, in this court. On July 18, 2005, this court dismissed Reed's appeal of the trial court's ruling for lack of jurisdiction.

Back in the trial court, the Board moved for summary judgment on the amended complaint on January 12, 2006, and Reed filed a cross-motion for summary judgment on February 6, 2006.

The trial court granted the Board's motion and denied Reed's motion on May 26, 2006. The court found that because the Board had already adjudicated the issue of whether Reed was in fact disabled, Reed was precluded by the doctrine of collateral estoppel from relitigating the issue of disability at an ordinary disability benefits hearing. Furthermore, the court again found Reed's request for an order of *mandamus* to be an inappropriate remedy.

Reed has filed a timely appeal.

At the outset, we observe that the Board has filed a motion to strike Reed's brief in its entirety or, alternatively, to strike certain portions of Reed's brief, which was taken with this case. In the motion, the Board argues that Reed's brief improperly asks that we address the dismissal of his original complaint, an issue that the Board maintains has already been litigated. The Board further objects to Reed's citation in his brief to nonprecedential unpublished orders of this court.

We refuse to strike those portions of Reed's brief discussing his original complaint because, as discussed later in this opinion, the propriety of the trial court's dismissal of Reed's original complaint is properly before this court. However, we strike all improper citations to unprecedential unpublished orders of this court. See Osman v. Ford Motor Co., 359 Ill. App. 3d 367, 374 (2005) (parties may use the reasoning and logic that the Illinois Appellate Court has used in an unpublished decision but may not cite that unpublished decision as authority).

We will first address the trial court's grant of summary judgment in the Board's favor on Reed's amended complaint.

> "The use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit. [Citation.] However, summary judgment is a drastic measure and should be granted only if the movant's right to judgment is clear and free from doubt. [Citation.] Summary judgment is appropriate only where 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.] *** The standard of review of an order granting summary judgment is *de novo*." Blair

7

v. Nevada Landing Partnership RBG, LP, 369 Ill. App. 3d 318, 322 (2006), quoting 735 ILCS 5/2-1005(c) (West 2004).

While there was no genuine issue of material fact before the trial court, we find that summary judgment in favor of the Board was erroneously entered because Reed's amended complaint raised a legal issue as to whether, in refusing Reed's request to apply for ordinary disability benefits, the Board violated his procedural due process rights. We further find that, in fact, Reed was entitled to summary judgment on this basis.

We note that this issue was not specifically or adequately raised in Reed's brief and is therefore waived. See 210 Ill. 2d R. 341(h)(7) ("[p]oints not argued are waived"); Felzak v. Hruby, 367 Ill. App. 3d 695, 721 (2006) (stating that issues not raised in the appellant's brief are waived). However, in the interest of justice, we choose to consider the due process issue. See Caparos v. Morton, 364 Ill. App. 3d 159, 180 (2006) ("waiver is customarily considered an admonition to the parties and not a hindrance to a reviewing court's ability to address issues of law"); Carpetland U.S.A., Inc. v. Illinois Department of Employment Security, 201 Ill. 2d 351, 397 (2002) ("the doctrine of waiver may be relaxed when necessary to maintain a uniform body of precedent, or where the interests of justice so require"). We note additionally that this court raised the issue of whether Reed was denied his due process rights when he was not allowed to apply for ordinary disability benefits during oral arguments and that attorneys for both parties had the opportunity to respond concerning this issue.

Administrative proceedings must comply with the requirements and basic principles of due process. O'Callaghan v. Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago,

302 Ill. App. 3d 579, 586 (1998). "[P]rocedural due process in an administrative proceeding does not require a proceeding in the nature of a judicial proceeding [citation] but is satisfied by a form of procedure that is suitable and proper to the nature of the determination to be made and conforms to fundamental principles of justice." Telcser v. Holzman, 31 Ill. 2d 332, 339 (1964); Abrahamson v. Illinois Department of Professional Regulation, 153 Ill. 2d 76, 92 (1992) ("due process is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand").

In the instant case, Reed wrote a letter on January 20, 2004, demanding that the Board send him an application for ordinary disability benefits. In response to that letter, the Board refused to allow Reed to apply for benefits and refused to even send him an application. The Board's reasoning for this refusal, according to its letter and statements made by its counsel during oral arguments, was that Reed already had a duty benefits claim pending in court based on the same injury, and it was therefore justified in postponing Reed's ordinary disability benefits application until litigation had ceased. By analogy, this is similar to a clerk of the circuit court refusing to file a litigant's complaint because the litigant has already filed an earlier claim based on the same cause of action. There, clearly, the litigant would be permitted to at least file the complaint, though the complaint might later be dismissed without the benefit of a trial. Similarly, granting Reed the right to file an application was "suitable and proper to the nature of the determination to be made" and, we find, was required to "conform[] to fundamental principles of justice." Telcser, 31 Ill. 2d at 339. We acknowledge that the Board perhaps could dismiss the application and refuse to hold a hearing after fully evaluating the application, as is discussed later

9

in this opinion. However, we find that Reed had a due process right to file an application for benefits and that the right was violated by the Board.

Therefore, the Board was not entitled to judgment as a matter of law and summary judgment should not have been granted in its favor and should instead have been entered in Reed's favor on this basis.

The Board argues that summary judgment was nonetheless proper because *mandamus* was an inappropriate remedy in this case. We disagree.

"*[M]andamus* is an extraordinary remedy awarded in the exercise of sound judicial discretion according to legal principles. [Citation.] *Mandamus* is proper when one seeks to compel a public officer to perform duties that are purely ministerial in nature and that require no exercise of judgment on the part of the public officer. [Citation.] *Mandamus* is available only when the plaintiff has set forth every material fact needed to prove that he has a clear, legal right and is entitled to the performance of the act he seeks to compel." Baldacchino v. Thompson, 289 Ill. App. 3d 104, 109 (1997).

"A court may award a remedy such as *mandamus* where the purported administrative agency has proceeded illegally." Heerey v. City of Des Plaines, 225 Ill. App. 3d 203, 210 (1992).

The facts of this case demonstrate that Reed had the right to apply for an ordinary disability benefits hearing, which was denied him by the Board. The act of giving Reed an application is "purely ministerial in nature" and does not require the use of the Board's discretion. Baldacchino, 289 Ill. App. 3d at 109. Accordingly, *mandamus* is a proper remedy in this case.

10

As an aside, we further note that, in lieu of mandamus, Reed could have filed a complaint asking that the trial court exercise its injunctive powers to compel the Board to allow Reed to apply for ordinary disability benefits. See <u>Local 1894, American Federation of State, County & Municipal Employees, AFL-CIO v. Holsapple</u>, 201 Ill. App. 3d 1040, 1045 (1990) (stating that in order for injunction to be appropriate, the following is required: "(a) possession of a certain and clearly ascertained right which requires protection; (b) irreparable injury if the injunctive relief is denied; and (c) lack of an adequate remedy at law"); <u>Hadley v. Department of Corrections</u>, 362 Ill. App. 3d 680, 684 (2005) (discussing the requirements to sustain an action for injunction).

Although we hold that the Board, in order to comply with procedural due process, should have allowed Reed to file an application for ordinary disability benefits, we pass no judgment on whether, once that application was tendered, the Board would be justified in denying Reed a hearing on the issue of ordinary disability benefits. First, the doctrine of collateral estoppel may bar Reed's ordinary disability claim if Reed relies on his June 2, 2000, injury in his application for an ordinary disability benefits hearing because the Board has already determined that Reed was not left disabled as a result of that injury. See <u>Mabie v. Village of Schaumburg</u>, 364 Ill. App. 3d 756, 758 (2006) ("[c]ollateral estoppel, a branch of *res judicata*, prohibits the relitigation of an issue actually decided in an earlier proceeding between the same parties"). This is especially true in light of the fact that, during oral argument, counsel for Reed conceded that the standard for proving disability is the same for both duty and ordinary disability benefits.

Second, the Board may deny Reed a hearing on his claim for ordinary disability benefits because of the language of the ordinary disability benefits statute itself. This court understands

section 6-152 of the Code to govern the distribution of disability benefits based on injuries incurred while not on duty. See 40 ILCS 5/6-152 (West 2004) ("[a]ny fireman *** who becomes disabled after the effective date as the result of any cause other than the performance of an act or acts of duty, shall have a right to receive ordinary disability benefit"). Should Reed claim in his section 6-152 application that he was disabled as a result of his June 2, 2000, injury, an injury that undisputedly occurred while on duty, he may not be entitled to an ordinary disability benefits hearing.

Next, we must address Reed's arguments that the trial court erred in dismissing his original complaint. At the outset, the Board responds that this court cannot properly review the trial court's dismissal of Reed's original complaint because, following its dismissal, Reed appealed and we dismissed Reed's appeal for lack of jurisdiction. The Board argues, therefore, that we have already reviewed the propriety of the trial court's dismissal of Reed's original complaint.

The appellate court generally does not have jurisdiction to consider an appeal from a nonfinal order. In re Curtis B., 325 Ill. App. 3d 393, 396 (2001), citing 134 Ill. 2d R. 303. However, in general, once a final order has been entered in a case, all nonfinal orders previously entered may be reviewed by the appellate court. Alpine Bank of Illinois v. Yancy, 274 Ill. App. 3d 766, 769 (1995). "An order is final and appealable if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof." R.W. Dunteman Co. v. C/G Enterprises, Inc., 181 Ill. 2d 153, 159 (1998). An order dismissing a complaint is not final and appealable unless the language of the order specifies that litigation has ended and that the plaintiff is not allowed to replead. Cole v.

12

1-06-1710

Hoogendoorn, Talbot, Davids, Godrey & Milligan, 325 Ill. App. 3d 1152, 1153 (2001). Even if the trial court originally declares it has dismissed a complaint with prejudice, if after reconsideration the court allows the plaintiff to file an amended complaint, the prejudice of the original dismissal is vacated; it is no longer a final order and is therefore not appealable. See Kievman v. Edward Hospital, 122 Ill. App. 3d 187, 190 (1984).

In the present case, the trial court initially dismissed Reed's original complaint with prejudice. However, Reed moved for the court to reconsider and moved to amend the complaint. The court, convinced by Reed's motion, modified its earlier decision and specifically provided that Reed could file an amended complaint. Since the trial court's order dismissing Reed's original complaint permitted him to file an amended complaint, that order was not final, the matter was still pending before the trial court and we did not have appellate jurisdiction to consider Reed's appeal of that order. A final decision, which terminated the litigation between the parties, occurred when the trial court granted summary judgment in favor of the Board on Reed's amended complaint. Upon Reed's appeal of that final order, this court has jurisdiction to review all nonfinal orders entered by the trial court, including its order dismissing Reed's original complaint. See Alpine Bank of Illinois, 274 Ill. App. 3d at 769. For these reasons, we disagree with the Board's argument and refuse to find that we are barred from considering the merits of Reed's original complaint because of our dismissal of his earlier appeal.

Nonetheless, while neither party specifically addressed the issue in its brief, we observe that Reed has waived his right to our review of the dismissal of his original complaint.

In order to "preserve for appeal the previous dismissal of claims, [the plaintiff] either must

13

stand on the dismissed counts and challenge the ruling at the appellate level or reallege or incorporate the dismissed counts in subsequent complaints." Abrams v. Watchtower Bible & Tract Society of New York, Inc., 306 Ill. App. 3d 1006, 1014 (1999). If the amended complaint fails to reallege, adopt or refer to the original complaint, the original complaint is, in effect, abandoned. Abrams, 306 Ill. App. 3d at 1014. While a party may waive his or her right to contest the dismissal of his or her original complaint, waiver does not generally limit the ability of the appellate court to address issues of law, but rather, is an "admonition to the parties." Carparos v. Morton, 364 Ill. App. 3d 159, 180 (2006).

In this case, Reed opted to file an amended complaint rather than to stand on his original complaint. In his amended complaint, Reed did not preserve those allegations raised in his original complaint. Accordingly, Reed has waived review of the dismissal of his original complaint and this court need not look further at Reed's arguments in this regard.

Waiver aside, we note that Reed argues that dismissal of his original complaint for lack of subject matter jurisdiction was erroneous for numerous reasons. First, he argues that the Board was equitably estopped from enforcing the 35-day time bar. Second, he argues that jurisdiction was transferred from the Board to the CFD until the CFD ultimately declined to reinstate Reed, so the statute of limitations did not begin to run until then. He further argues that the Board's findings were void when they violated Reed's due process rights and exceeded the Board's statutory authority, so the statute of limitations did not apply. Finally, Reed argues that, regardless of the time bar, the actions of the Board should have been overturned for public policy reasons, specifically because the results in this case were unfair. We have reviewed each of these

arguments and have found them to be without merit.

Though we will not expound on each of the above arguments advanced by Reed, we are compelled to comment on his contentions related to public policy.

First, Reed contends that the result in this case, that he was denied disability benefits when the Board found that he was not disabled but was subsequently denied reinstatement when the CFD found that he was not fit for duty, was unfair.

We direct Reed to Dowrick v. Village of Downers Grove, 362 Ill. App. 3d 512 (2005), in which we explained the policy reasons that this seemingly unfair result is possible. In Dowrick, in the context of determining that the Downer's Grove Board of Police and Fire Commissioners (the Board of Commissioners) and the Board of Trustees of the Village's Firefighters Pension Fund (the Pension Board) were not in privity, we wrote:

> "We acknowledge that, at first blush, it seems incongruous that separate
> administrative findings could lead to a firefighter being discharged because of a
> disability while also being denied a disability pension. However, comparison of the
> statutes respectively governing proceedings before the Board of Commissioners
> and those before the Pension Board suggest a possible rationale for such a result.
> Whereas the Illinois Municipal Code (65 ILCS 5/1-1-1 *et seq.* (West 2002))-which
> governs employment of firefighters-does not specify the manner in which a
> municipality must prove cause for discharge (see 65 ILCS 5/10-2.1-17 (West
> 2002)), the requirements for obtaining a firefighter's disability pension are more
> specific and stringent. *** Given the compelling public interest in ensuring the

fitness of firefighters to perform their duties, it is reasonable to conclude that the General Assembly deliberately set the bar lower for a municipality seeking to discharge an unfit firefighter than for a firefighter to obtain a disability pension, and committed the decisions to separate agencies with different missions." Dowrick, 362 Ill. App. 3d at 521.

We further noted:

"Indeed, the Village's interest in ensuring the fitness of its firefighters may often diverge from the interests of the participants and beneficiaries of a pension fund in ensuring that the funds are not depleted by dubious claims. The board members cannot act solely in the interests of the fund's participants and beneficiaries if they are also charged with ensuring the safety and welfare of the general public." Dowrick, 362 Ill. App. 3d at 520.

Second, in the context of his argument that the result in his case is unfair, Reed urges us to overturn Nowak v. Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago, 315 Ill. App. 3d 403 (2000). In Nowak, we examined the language of section 6-153 of the Code (40 ILCS 5/6-153 (West 1998)) and found that it plainly mandated that "before granting a disability benefit, the Board must receive proof of the claimant's disability from at least one physician appointed by the Board." Nowak, 315 Ill. App. 3d at 411-12. Accordingly, because no Board appointed physician had testified that the Nowak plaintiff was disabled, we were obliged to affirm the Board's rejection of the plaintiff's claim for disability benefits.

1-06-1710

In a special concurrence, Justice Buckley, who also authored the <u>Nowak</u> majority opinion, noted that several physicians, who were not appointed by the Board, had provided proof of the plaintiff's disability, that the Board-appointed physician's testimony was questionable because it misstated the plaintiff's testimony and that the only physician who unequivocally testified that the plaintiff was not disabled did not take into account all evaluations of the plaintiff's condition. Justice Buckley concluded that the Board's decision was clearly against the weight of the evidence but further noted that "this court's hands are tied by the application of section 6-153 of the Code, and we must affirm the Board's denial of Nowak's application for duty disability benefits." <u>Nowak</u>, 315 Ill. App. 3d at 412 (specially concurring).

In insisting that we overturn <u>Nowak</u>, Reed, in effect, asks us to address the merits of the Board's February 20, 2002, determination that he was not entitled to duty disability benefits. As noted earlier in this opinion, Reed failed to seek administrative review of that decision within the statute of limitation and has waived any argument that he should be excused from his failure to file within the time limit. However, were we to address this argument, we would not overturn or rule against <u>Nowak</u>. We reluctantly agree with the <u>Nowak</u> court's interpretation of the unambiguous language of section 6-153 of the Code. The legislature has very clearly provided that in order for a claimant to prevail on a claim for disability benefits, a Board-appointed physician must provide proof that the claimant is disabled.

In summary, we find that the propriety of the trial court's dismissal of Reed's original complaint is properly before this court, but that Reed has waived review of that dismissal. Waiver aside, we find that the original complaint was properly dismissed for lack of subject matter

17

jurisdiction. We further find that the trial court erred in entering summary judgment in favor of the Board on Reed's amended complaint and find that summary judgment instead should have been entered in Reed's favor because the Board violated his due process rights in refusing to allow him to apply for an ordinary disability benefits hearing. Accordingly, we remand this case to the trial court with instructions that it enter summary judgment in favor of Reed and issue a writ of *mandamus* directing the Board to allow Reed to file such an application.

Reversed and remanded with instructions.

THEIS, P.J., and CUNNINGHAM, J., concur.