# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Tunca v. Painter, 2012 IL App (1st) 093384**

---

| | |
|---|---|
| Appellate Court Caption | JOSH TUNCA, Plaintiff-Appellant, v. THOMAS A. PAINTER and DANIEL CONWAY, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket Nos. 1-09-3384, 1-10-0625 cons. |
| Filed | February 10, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a slander action alleging that defendants made statements that plaintiff, a surgeon, cut a patient's artery while removing an ovarian tumor, the appellate court lacked jurisdiction to consider the dismissal of the counts of plaintiff's first amended complaint against the vascular surgeon who repaired the patient's artery and the chairman of the hospital's quality review committee alleging slander *per se* and a violation of the Medical Studies Act, since the record did not contain documents supporting the appellate court's jurisdiction, and furthermore, plaintiff waived review of the dismissals by filing amended complaints that did not reallege those counts; however, the dismissal of the counts of plaintiff's final amended complaint alleging slander *per quod* by defendants was reversed on the ground that those counts alleged sufficient facts to sustain a cause of action. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-L-6700; the Hon. James Egan, Judge, presiding. |
| Judgment | Dismissed in part and reversed in part; cause remanded. |

Counsel on Appeal

Christian Consentino, of St. Charles, for appellant.

Hall Prangle & Schoonveld, LLC, of Chicago (Eric P. Schoonveld, Hugh C. Griffin, and Thomas M. Comstock, of counsel), for appellees.

Panel

JUSTICE J. GORDON delivered the judgment of the court, with opinion.

Justices Fitzgerald Smith and Howse concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Dr. Josh Tunca appeals from two sets of orders from the circuit court of Cook County dismissing multiple complaint counts against defendants Dr. Thomas Painter and Dr. Daniel Conway for failure to state a cause of action. Plaintiff's complaint was amended three times and this appeal encompasses orders entered upon plaintiff's first and third amended complaints. The first set of orders of the trial court dismissed one count of slander *per se* against Dr. Painter (count I of plaintiff's first amended complaint), one count of slander *per se* against Dr. Conway (count III of plaintiff's first amended complaint), and one count of violation of section 8-2101 of the Illinois Code of Civil Procedure (735 ILCS 5/8-2101 (West 2006)) (Medical Studies Act or Act) against Dr. Conway (count IV of plaintiff's first amended complaint). The second set of orders of the trial court dismissed one count of slander *per quod* against Dr. Painter (count I of plaintiff's third amended complaint) and one count of slander *per quod* against Dr. Conway (count III of plaintiff's third amended complaint). Plaintiff maintains that his complaints have sufficient allegations to state a cause of action for slander *per se* and slander *per quod* against both Dr. Painter and Dr. Conway, and for violation of the Medical Studies Act by Dr. Conway.

¶ 2                                    BACKGROUND

¶ 3     Plaintiff, a surgeon who specializes in gynecological oncology at Northwest Community Hospital, filed his initial complaint against defendants on July 28, 2007. That complaint alleged, in pertinent part, that on or about June 24, 2006, plaintiff surgically removed an ovarian tumor, and within hours of that surgery, the patient developed a blood clot in her femoral artery which caused her to lose the pulse in her left leg. According to that complaint, on or about June 25, 2006, Dr. Painter, a vascular surgeon at the same hospital, performed a femoral-femoral bypass on that patient to correct the condition on her leg. In count I of that complaint, labeled "Slander *Per Se* by Dr. Painter," plaintiff alleged that on or about June 28, 2006, Dr. Painter told Dr. McGillan, the vice-president and medical affairs director for Northwest Community Hospital, that plaintiff had "inadvertently cut the left iliac artery of [p]atient during the course of his operation on June 24, 2006." Plaintiff also alleged that in

-2-

the course of work at that hospital, Dr. Painter thereafter stated, in the company of other doctors and medical professionals, including Dr. McGillan and Dr. Glass, that plaintiff had "negligently and inadvertently severed [p]atient's artery."

¶ 4    In count II of that complaint, labeled "Slander *Per Se* by Dr. Conway," plaintiff alleged that on or about February 14, 2007, plaintiff encountered Dr. Conway, the chairman of Northwest Community Hospital department of surgery's quality review committee, and in the presence of other doctors and medical professionals, Dr. Conway informed plaintiff that he should expect a letter from the committee "regarding his allegedly cutting the artery of [p]atient." In addition, plaintiff alleged that on April 11, 2007, plaintiff was called to a meeting of the surgical quality review committee over which Dr. Conway presided. At that meeting, Dr. Conway stated in front of other committee members that he "observed a gross specimen from [p]atient after it was received by the hospital's pathologist and he observed the allegedly severed iliac artery from [p]atient's gross specimen."

¶ 5    With respect to counts I and II of plaintiff's initial complaint, plaintiff alleged that defendants' statements in the presence of and to third parties were false, malicious, slanderous and made with the intent to injure plaintiff's good name and credit in his profession. Additionally, plaintiff alleged that those statements were made for the purpose of causing plaintiff's fellow medical professionals from whom he received referrals of patients to believe that plaintiff had become incompetent to discharge his duties. In addition, plaintiff alleged that defendants' statements caused him to be injured in his good name and professional reputation, and resulted in the loss of patients from referral sources and will work to his injury in the procurement of future patients. Plaintiff alleged that as a result of defendants' slanderous statements, plaintiff has been damaged in excess of $3 million.

¶ 6    In count III of plaintiff's initial complaint, labeled "Violation of the Medical Studies Act," plaintiff reincorporated the charges set forth in the previous paragraphs and alleged that Dr. Conway's conduct constituted a violation of the Illinois Medical Studies Act (735 ILCS 5/8-210 (West 2006)), in that his statements made outside the peer review committee meeting in the presence of other doctors constituted disclosure of privileged information under the Act. With respect to count III, plaintiff alleged that as a result of Dr. Conway's violation of the Act, plaintiff was injured in his good name and reputation, which has resulted in the loss of patients from referral sources and will work to his injury in procuring future patients. Plaintiff alleged that as a result of Dr. Conway's violation of the Act, plaintiff has been damaged in excess of $3 million.

¶ 7    On February 22, 2008, the trial court dismissed the counts of slander *per se* (counts I and II of the initial complaint) against each defendant, pursuant to the innocent construction rule. A second reason given for the dismissal of the count of slander *per se* with respect to Dr. Conway alone (count II of the initial complaint) was that the factual statements contained therein are protected by the Medical Studies Act and cannot serve as a basis for a defamation claim. For that reason, the trial court also dismissed plaintiff's allegation that Dr. Conway violated the Act (count III of the initial complaint).

¶ 8    On March 18, 2008, plaintiff filed a first amended complaint, in which he realleged the same facts contained in his previous complaint, except that in count I, again labeled "Slander

*Per Se* by Dr. Painter," plaintiff alleged that on or about June 28, 2006, Dr. Painter told Dr. McGillan that plaintiff had "inadvertently *and negligently* cut the left iliac artery of [p]atient during the course of his operation on June 24, 2006," thus adding the word "negligently" to his allegations. (Emphasis added.) In addition, plaintiff added a count which was labeled "Violation of the Medical Studies Act by Dr. Painter" (count II of plaintiff's first amended complaint), in which he realleged the previous paragraphs and stated that Dr. Painter's conduct constituted a violation of the Act. Plaintiff alleged that Dr. Painter's statements were outside the auspices of a peer review committee meeting and in the presence of other doctors and medical personnel constituted disclosure of privileged information under the Act.

¶ 9 Additionally, in the count labeled "Slander *Per Se* by Dr. Conway" (count III of the first amended complaint), plaintiff realleged the facts contained in count II of his previous complaint, but omitted the allegation with respect to Dr. Conway's statements made at the meeting of the surgical quality review committee. In addition, plaintiff added to that count the allegation that when Dr. Conway informed plaintiff that he should expect a letter from the committee regarding his alleged negligent cutting of the patient's artery, the doctors and medical personnel who were present at that time were not members of any hospital or department peer review committee. In the count labeled "violation of the Medical Studies Act by Dr. Conway" (count IV of the first amended complaint), plaintiff alleged the same facts as the corresponding count in his previous complaint (count III of the initial complaint).

¶ 10 On October 29, 2008, the trial court again dismissed, this time with prejudice, count I of plaintiff's first amended complaint, which alleged slander *per se* by Dr. Painter, and counts III and IV of plaintiff's first amended complaint, which alleged slander *per se* and violation of the Medical Studies Act by Dr. Conway, respectively. The trial court did not dismiss count II of plaintiff's first amended complaint, which alleged violation of the Medical Studies Act by Dr. Painter, which remained pending.

¶ 11 On November 3, 2008, plaintiff filed a second amended complaint, in which he realleged the facts contained in his previous complaints with respect to the surgery he performed on the patient in question, and Dr. Painter's subsequent surgery on that patient. In count I of plaintiff's second amended complaint, which was labeled "Slander *Per Quod* by Dr. Painter," plaintiff alleged the same facts contained in count I of his first amended complaint, which was then labeled "Slander *Per Se* By Dr. Painter." In addition, plaintiff alleged in that count that the statements made by Dr. Painter to doctors, including Dr. McGillan and Dr. Robert Glass, became widely disseminated among doctors with privileges at Northwest Community Hospital. He further alleged and that as a result of Dr. Painter's allegations that plaintiff severed the patient's artery, doctors on whom plaintiff relies to refer patients have come to question plaintiff's abilities as a surgeon and have referred fewer patients to him for that reason. Additionally, plaintiff alleged that as a result of Dr. Painter's statements, plaintiff has seen a precipitous drop in the number of patients referred by other doctors by approximately 25% since the time Dr. Painter made those statements, and that plaintiff expects that trend to continue.

¶ 12 In count II of plaintiff's second amended complaint, labeled "Violation of the Medical Studies Act by Dr. Painter," plaintiff realleged the facts in the corresponding count of his first amended complaint. In count III of his second amended complaint, labeled "Slander *Per*

-4-

*Quod* by Dr. Conway," plaintiff alleged the same facts contained in count III of his first amended complaint, which was then labeled "Slander *Per Se* by Dr. Conway." Plaintiff further alleged that his encounter with Dr. Conway took place in a common hallway of the hospital, and in addition to Dr. Conway's statement that a letter would be sent from the committee regarding the negligent cutting of the patient's artery, Dr. Conway also informed plaintiff that he, in fact, negligently cut that patient's artery. In addition, plaintiff alleged that Dr. Conway made those statements by "loudly vocalizing the same across said hallway." Further, plaintiff claimed that the allegations made by Dr. Conway became widely disseminated among the doctors with privileges at Northwest Community Hospital. He also averred that as a result of Dr. Conway's allegations that plaintiff did, in fact, negligently sever the patient's artery, doctors on whom plaintiff relies to refer patients have come to question plaintiff's abilities as a surgeon and have referred fewer patients to him for that reason. According to plaintiff, as a result of Dr. Conway's statements, plaintiff has seen a precipitous drop in the number of patients referred by other doctors by approximately 25% since Dr. Conway made those statements, and he expects that trend to continue.

¶ 13    On February 6, 2009, the trial court dismissed the counts of slander *per quod* (counts I and III of plaintiff's second amended complaint) against each defendant without prejudice, but did not dismiss the count of violation of the Medical Studies Act against Dr. Painter (count II of the second amended complaint).

¶ 14    On March 11, 2009, plaintiff filed a third amended complaint, in which he again realleged the facts in regard to the surgery he performed on the patient in question, and Dr. Painter's subsequent surgery. In count I of his third amended complaint, labeled "Slander *Per Quod* by Dr. Painter," plaintiff realleged the facts contained in count I of his first and second amended complaints, namely, that on June 28, 2006, Dr. Painter told Dr. McGillan that plaintiff had inadvertently and negligently cut his patient's artery during the course of an operation on June 24, 2006. As he had done previously, plaintiff again alleged that Dr. Painter stated in the presence of numerous other doctors, including Dr. McGillan and Dr. Glass, that plaintiff negligently and inadvertently severed the patient's artery. In addition, plaintiff alleged that presently and at the time Dr. Painter made his statements regarding plaintiff, plaintiff relied on physician referrals to his practice as a primary source of patients. Further, plaintiff alleged, more specifically, that once the false statements by Dr. Painter were made and disseminated throughout the hospital, several doctors, including Dr. Arvind Goyal, "became concerned over [plaintiff's] abilities to properly treat patients and for a time he would not refer patients that he otherwise would have referred, but for the allegations that [plaintiff] had negligently severed a patient's artery." Additionally, plaintiff alleged that, as a result of Dr. Painter's statements, plaintiff experienced a drop in his business income from 2006 to 2007 in the amount of $861,506.

¶ 15    In count II of his third amended complaint, labeled "Violation of the Medical Studies Act by Dr. Painter," plaintiff realleged the facts contained in the corresponding counts of his first and second amended complaints. In count III of plaintiff's third amended complaint, labeled "Slander *Per Quod* by Dr. Conway," plaintiff realleged the facts contained in count III of his first and second amended complaints, including the facts that on or about February 14, 2007, he encountered Dr. Conway, who told plaintiff, in the presence of other doctors, that plaintiff

had negligently cut his patient's artery and that he should expect a letter from the quality review committee regarding such negligent cutting of that patient's artery. Here too, plaintiff alleged, as he did in the preceding count I of that complaint, that presently and at the time Dr. Conway made his statement regarding plaintiff, plaintiff relied on physician referrals to his practice as a primary source of patients. In addition, plaintiff alleged that the statement by Dr. Conway became widely disseminated among all of those who were present and within earshot of his comments, as well as to others, including doctors who were not present at the time those comments were made. Further, plaintiff alleged that once the false statement by Dr. Conway became disseminated throughout the hospital, several doctors including Dr. Goyal, "became concerned over [plaintiff's] ability to properly treat patients and for a time he would not refer patients that he otherwise would have referred but for the allegations that [plaintiff] had negligently severed a patient's artery." (Emphasis added.) Plaintiff further alleged that as a result of Dr. Conway's statement, plaintiff experienced a drop in his business income from 2006 to 2007 in the amount of $861,506.

¶ 16    On June 16, 2009, the trial court granted defendants' motion to dismiss, pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2008)), counts I and III of plaintiff's third amended complaint, which, as noted, alleged that slander *per quod* by Dr. Painter and Dr. Conway, respectively. Count II of the third amended complaint, which alleged violation of the Medical Studies Act by Dr. Painter, remained pending. In one of its written orders, the trial court also found that there was no just reason to delay enforcement or appeal of those orders pursuant to the Illinois Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Jan 1, 2006)).

¶ 17    Plaintiff filed a motion to reconsider the trial court's dismissal orders entered on June 16, 2009, which the trial court denied on November 5, 2009. On December 7, 2009, plaintiff filed his notice of appeal from the judgment orders entered on June 16, 2009 and the denial of the motion to reconsider.[1]

¶ 18    On January 28, 2010, the trial court entered an order in which it found no just reason to delay an appeal under Supreme Court Rule 304(a) from prior orders entered by the trial court on October 29, 2008, dismissing the counts of slander *per se* and the count of a violation of the Medical Studies Act by Dr. Conway, in plaintiff's first amended complaint. On March 2, 2010, plaintiff apparently filed a notice of appeal from the orders entered on October 29, 2008, and two days later, on March 4, 2010, he apparently filed a document titled "motion for an extension of time in which to file late notice of appeal, joining prior appeal." It also appears that on March 9, 2010, this court granted that motion. None of these documents, including the order granting plaintiff's motion, are contained in the record, and are found only in the appendix to defendants' brief. None of the parties appear to have objected to the fact that the foregoing documents are not included in the record, but were included only in

---

[1]While plaintiff's notice of appeal was filed more than 30 days after the trial court's denial of his motion to reconsider, we note that December 5, 2009, was a Saturday, and under section 1.11 of the Statute on Statutes (5 ILCS 70/1.11 (West 2006)), his motion on the following Monday was timely.

defendants' appendix. Nevertheless, for the reasons discussed below, we have concluded that we lack jurisdiction to entertain the appeal.

¶ 19                                       ANALYSIS
¶ 20             1. Slander *Per Se* by Dr. Painter and Dr. Conway and Violation of the
                         Medical Studies Act by Dr. Conway

¶ 21       On appeal from the trial court's orders entered on October 29, 2008, which dismissed plaintiff's claims of slander *per se* against Dr. Painter and Dr. Conway, and plaintiff's claim of violation of the Medical Studies Act by Dr. Conway pursuant to counts I, III and IV of plaintiff's first amended complaint, plaintiff first contends that the trial court erred in dismissing his claims of slander *per se* because defendants' statements were not entitled to protection under the innocent construction rule. Plaintiff further contends that the trial court erred in dismissing his claim of violation of the Medical Studies Act by Dr. Conway because information gathered before a meeting of the hospital's peer review committee is not immunized by absolute privilege. We have determined that we cannot reach the merits of plaintiff's appeal from those orders for two reasons. First, it appears that we do not have jurisdiction to entertain the appeal. Second, even if we did have jurisdiction, plaintiff failed to preserve the claims in his first amended complaint for review.

¶ 22       We fist note that although defendants have not contested this court's jurisdiction to review this matter, it is well established that " '[w]hen jurisdiction is lacking, the court must dismiss the appeal on its own motion.' " *Stein v. Krislov*, 405 Ill. App. 3d 538, 540, 939 N.E.2d 518, 522 (2010) (quoting *Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205, 210, 642 N.E.2d 1264, 1266 (1994)); see also *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 402 Ill. App. 3d 961, 971, 931 N.E.2d 810, 820 (2010) (finding that the question of jurisdiction in every case " 'is always open and we may of our own motion dismiss an action where want of jurisdiction appears' " (quoting *Board of Education of the City of Chicago v. Chicago Teachers Union, Local 1*, 26 Ill. App. 3d 806, 813, 326 N.E.2d 158, 164 (1975))).

¶ 23       We further note that Illinois Supreme Court Rule 303(a) requires a party appealing from a judgment of a circuit court to file a notice of appeal within 30 days after entry of the final judgment appealed from or if a timely postjudgment motion against the judgment is filed, within 30 days from the entry of the order disposing of the last postjudgment motion. Ill. S. Ct. R. 303(a) (eff. Dec. 17, 1993). Supreme Court Rule 303(d) provides that if a party fails to file a timely notice of appeal, the reviewing court may grant that party leave to appeal if that party files, within 30 days after expiration of the time to file a notice of appeal, a motion which provides a reasonable excuse for failure to file a timely notice, "accompanied by the proposed notice of appeal." Ill. S. Ct. R. 303(d) (eff. Dec. 17, 1993). In addition, compliance with the deadlines for appeals under Rule 303 is jurisdictional, and this court therefore is without jurisdiction to review an appeal that was not filed in a timely manner. *Martin v. Cajda*, 238 Ill. App. 3d 721, 728, 606 N.E.2d 566, 572 (1992); *In re Application of the County Treasurer & Ex-Officio County Collector of Cook County for Judgment & Order of Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes for*

*1984*, 208 Ill. App. 3d 561, 563, 567 N.E.2d 486, 488 (1990). While the appeal from the orders entered on October 29, 2008, is pursuant to Rule 304(a), it is still subject to the timing requirements of Rule 303. See Ill. S. Ct. R. 304(a) ("The time for filing a notice of appeal [under Rule 304(a)] shall be as provided in Rule 303.").

¶ 24        In this case, plaintiff does not mention in his brief when he filed his notice of appeal from the trial court's orders entered on October 29, 2008, which, as stated, were given a Rule 304(a) finding on January 28, 2010, and nothing in the record indicates that a notice of appeal from those orders has ever been filed. Defendants, however, in their brief state that plaintiff filed his notice of appeal from those orders on March 2, 2010, and his motion for extension of time to file a late notice of appeal on March 4, 2010. While the record does not corroborate those assertions, defendants included in the appendix to their brief copies of plaintiff's notice of appeal and subsequent motion. Also included in the appendix to defendants' brief is what purports to be a copy of this court's order granting plaintiff's motion on March 9, 2010.

¶ 25        Generally, in a direct appeal from the trial court, the transcript of the record must reveal the basis for the jurisdiction of the appellate court. *Toomey v. Toomey*, 350 Ill. 162, 164, 182 N.E.2d 759, 759 (1932); *Stevens Hotel Co. v. Art Institute of Chicago*, 342 Ill. 180, 181, 173 N.E.2d 761, 761 (1930). In addition, it is well established that attachments to briefs which are not included as part of the record are not properly before the reviewing court and may not be considered to supplement the record. *Tiller v. Semonis*, 263 Ill. App. 3d 653, 656, 635 N.E.2d 572, 573 (1994); *Zimmer v. Melendez*, 222 Ill. App. 3d 390, 394-95, 583 N.E.2d 1158, 1162 (1991). We note, however, that this court may take such an attachment into consideration if the parties so stipulate. *People v. Stewart*, 343 Ill. App. 3d 963, 975, 799 N.E.2d 1011, 1020 (2003); *Office Electronics, Inc. v. Adell*, 228 Ill. App. 3d 814, 819, 593 N.E.2d 732, 735 (1992). Nevertheless, while the parties may enter into stipulations concerning evidence and pleadings, such stipulations have been held to be insufficient to substitute the parts of the record which show the grounds for this court's jurisdiction. *Troy Laundry Machinery Co. v. Kelling*, 57 Ill. App. 210, 212 (1894) ("[T]here must always be presented, to give this court jurisdiction, the record upon which the court below acted, and it is not sufficient for the parties to agree on what the record below was or what the record for this court shall be."); see also *Chicago Title & Trust Co. v. Brooklyn Bagel Boys, Inc.*, 222 Ill. App. 3d 413, 421, 584 N.E.2d 142, 147 (1991) (noting that an attachment to a brief is not a substitute for compliance with Supreme Court Rule 303).

¶ 26        In this case, the record before us contains no documents which establish this court's jurisdiction. The only documents which have any bearing on such jurisdiction, namely, plaintiff's notice of appeal, his motion for an extension of time to file his notice of appeal and this court's order granting him leave to file a late notice of appeal, have been introduced as attachments to defendant's brief, which are not considered sufficient to establish this court's jurisdiction. Therefore, plaintiff's appeal from the orders entered on October 29, 2008, may not be considered for that reason alone.

¶ 27        Moreover, even if those documents had been part of the record, an argument can be made that they would not establish this court's jurisdiction because plaintiff's motion for an extension of time was filed after his notice of appeal had already been filed. Support for that

conclusion can be found in *Gaynor v. Walsh*, 219 Ill. App. 3d 996, 1003, 579 N.E.2d 1223, 1227 (1991), where the plaintiff filed a motion for leave to file late notice of appeal 76 days after the judgment was entered, which was therefore 16 days after the deadline for filing that motion. Seven days later, the court granted plaintiff's motion, and on that same day, plaintiff filed the notice of appeal. *Id*. The court held that it had erred in granting plaintiff's motion because it was filed untimely, and then noted that even if plaintiff's motion had been timely, it still would have failed to comply with Rule 303 because it was not " '*accompanied* by the proposed notice of appeal' " as required by the rule. (Emphasis in original.) *Gaynor*, 219 Ill. App. 3d at 1004-05, 579 N.E.2d at 1228 (quoting Ill. S. Ct. R. 303(e)) . Thus, it appears that plaintiff did not comply with Supreme Court Rule 303(d) because his motion was filed two days after the filing of his notice of appeal and was therefore not accompanied by that notice. Accordingly, it appears that this court does not have jurisdiction over plaintiff's appeal from the orders entered on October 29, 2008.

¶ 28    Even if our jurisdiction over counts I, III and IV of plaintiff's first amended complaint warranted retention through the use of the supervisory power of our supreme court, as, for example, was the case following *In re Estate of Eiberger*, 49 Ill. App. 3d 1129, 368 N.E.2d 230 (1977) (unpublished order under Supreme Court Rule 23), in supervisory order under docket No. 50090, such power does not reside in the lesser courts of intermediate appeal. See, *e.g.*, *People v. Baskin*, 213 Ill. App. 3d 477, 485, 572 N.E.2d 1067, 1072-73 (1991). In any event, even if our jurisdiction were retained, the result would remain the same. As defendants correctly noted, plaintiff forfeited his right to seek review of the trial court's dismissal of his claims of slander *per se* against each defendant and his claim of violation of the Medical Studies Act against Dr. Conway because plaintiff's second and third amended complaints did not incorporate, reallege or otherwise refer to those counts, and no appeal was taken before the filing of the second and third amended complaints.

¶ 29    It is well established that in Illinois, a party who files an amended pleading waives any objections to the trial court's ruling on prior complaints. *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 153, 449 N.E.2d 125, 126 (1983). The supreme court held in *Foxcroft*, " '[w]here an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier proceeding ceases to be part of the record for most purposes, being in effect abandoned and withdrawn.' " *Foxcroft*, 96 Ill. 2d at 154, 449 N.E.2d at 126 (quoting *Bowman v. County of Lake*, 29 Ill. 2d 268, 272 (1963)). The court further stated that "[t]here are significant policy considerations which favor adherence to this general rule. In particular is the interest in the efficient and orderly administration of justice. It is expected that a cause will proceed to trial on the claims set forth in the final amended complaint." *Foxcroft*, 96 Ill. 2d at 154, 449 N.E.2d at 126. It then concluded that "we perceive no undue burden in requiring a party to incorporate in its final pleading all allegations which it desires to preserve for trial or review." *Id*.

¶ 30    In addition, Illinois appellate courts have held that where a plaintiff obtains a Rule 304(a) finding by the trial court, which allows him to appeal from a dismissal of fewer than all counts in his complaint, such a plaintiff has two options to preserve those counts for appellate review. *Tabora v. Gottlieb Memorial Hospital*, 279 Ill. App. 3d 108, 113, 664 N.E.2d 267, 270-71 (1996); *Du Page Aviation Corp., Flight Services, Inc. v. Du Page*

*Airport Authority*, 229 Ill. App. 3d 793, 800, 594 N.E.2d 1334, 1338 (1992). He can either file an appeal from the order dismissing those counts *before* filing his next amended complaint, or he can reallege or preserve the dismissed count in his next amended complaint. *Tabora*, 279 Ill. App. 3d at 113-14, 664 N.E.2d at 271; *Du Page Aviation Corp.*, 229 Ill. App. 3d at 800, 594 N.E.2d at 1338. If the plaintiff does neither and files a subsequent complaint that does not reallege or preserve the dismissed claims, he waives his right to appeal from the trial court's order dismissing those counts of his prior complaint. *Tabora*, 279 Ill. App. 3d at 113-14, 664 N.E.2d at 271; *Du Page Aviation Corp.*, 229 Ill. App. 3d at 800, 594 N.E.2d at 1338.

¶ 31 In *Tabora*, 279 Ill. App. 3d at 113-14, 664 N.E.2d at 271, where plaintiff obtained an order from the trial court making final and appealable the dismissal of three of the four counts in his complaint, plaintiff waived his right to object to the ruling on those counts when he filed a new amended complaint that did not reallege, refer to, incorporate, or preserve the stricken portions of his previous complaint. In doing so, the court noted that even a simple paragraph or footnote in the amended pleadings notifying the defendants and the court that plaintiff was preserving the dismissed portions of his prior complaint for appeal would have been sufficient to preserve his right to object to the ruling on those counts. *Tabora*, 279 Ill. App. 3d at 114, 664 N.E.2d at 271. Similarly, in *Du Page Aviation Corp.*, the court held that plaintiff waived any objection to the trial court's ruling dismissing three of the four counts of plaintiff's prior complaint because its subsequent amended complaint did not reallege or refer to those counts. *Du Page Aviation Corp.*, 229 Ill. App. 3d at 800, 594 N.E.2d at 1338; *cf. Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 311-12, 662 N.E.2d 602, 607 (1996) (plaintiff preserved previously dismissed claims for appeal by including a footnote in his subsequent complaint stating that " '[t]he prior complaints are attached as *Appendix A* to preserve the previously dismissed claim [*sic*] for appeal' "); *Arnold v. Village of Chicago Ridge*, 181 Ill. App. 3d 778, 782, 537 N.E.2d 823, 825 (1989) (plaintiff preserved dismissed counts by referring to the stricken claims in her subsequent complaint).

¶ 32 In this case, the trial court dismissed counts I, III and IV of plaintiff's first amended complaint on October 29, 2008, which alleged slander *per se* by Dr. Painter and Dr. Conway, and violation of the Medical Studies Act by Dr. Conway. Plaintiff filed his notice of appeal from those orders on March 2, 2010, well after he filed his second amended complaint on November 3, 2008, and his third amended complaint on March 11, 2009. Thus, he did not preserve his right to object to the trial court's ruling on October 29, 2008, by appealing from those orders before filing an amended complaint.

¶ 33 In addition, plaintiff did not reallege his claims of slander *per se* against Dr. Painter or Dr. Conway in his second or third amended complaint, neither did he reallege his claim of violation of the Medical Studies Act by Dr. Conway in those later complaints. In fact, plaintiff made no reference to those dismissed claims and did not incorporate them in his second or third amended complaint. Although plaintiff alleged some of the same facts from his first amended complaint in his claims for slander *per quod* against Dr. Painter and Dr. Conway, plaintiff made no reference to his prior claims of slander *per se* against either defendant. Therefore, plaintiff has also failed to preserve his claims that were dismissed on

October 29, 2008, by incorporating them in his subsequent pleadings.

¶ 34     Plaintiff nevertheless contends that he preserved his claims of slander *per se* against both defendants because the facts necessary to state a cause of action for slander *per se* are present in his second and third amended complaints in the counts where he alleged slander *per quod* against each defendant. However, Illinois courts have consistently held that a plaintiff waived his or her right to object to the trial court's ruling in dismissing claims in his or her prior complaints where his or her subsequent complaints alleged the same facts, but a different theory of recovery. See, *e.g.*, *Vilardo v. Barrington Community School District 220*, 406 Ill. App. 3d 713, 719-20, 941 N.E.2d 257, 263-64 (2010); *Doe v. Roe*, 289 Ill. App. 3d 116, 120, 681 N.E.2d 640, 643-44 (1997).

¶ 35     In *Vilardo*, 406 Ill. App. 3d at 714, 941 N.E.2d at 260, plaintiff filed a two-count complaint in which he alleged that defendant: (1) improperly operated, managed, maintained, and controlled the premises of a batting cage; (2) allowed a hole to be present in the net protecting the pitcher; (3) failed to reasonably inspect the premises and the net when defendant knew or should have known such an inspection was necessary to prevent plaintiff's injury; and (4) failed to warn plaintiff of the condition of the premises and the net; and (5) as a result of defendant's conduct, plaintiff was struck and injured by a baseball. The two counts in plaintiff's complaint were "nearly identical," except that count I characterized defendant's conduct as negligence and count II characterized it as willful and wanton. *Id*. at 714-15. The trial court dismissed the negligence count with prejudice and dismissed the willful and wanton count without prejudice. *Id.* at 715. Plaintiff subsequently filed an amended complaint, which alleged the same facts as his original complaint and a few additional facts, including the allegation that defendant failed to lock the gate of the facility. *Id*. In that amended complaint, plaintiff only characterized defendant's conduct as willful and wanton, and did not refer to his prior claim of negligence. *Vilardo*, 406 Ill. App. 3d at 719, 941 N.E.2d at 263. The court held that plaintiff waived review of the trial court's dismissal of his negligence claim because he neither perfected his appeal before filing an amended complaint, nor did he include or refer to his negligence claim in his amended complaint. *Vilardo*, 406 Ill. App. 3d at 719-20, 941 N.E.2d at 263-64. In doing so, the court did not consider whether the facts alleged in defendant's amended complaint would have been sufficient to sustain a negligence claim, but simply noted that defendant omitted the negligence "claim" and did not refer to it in any way in his amended complaint. *Vilardo*, 406 Ill. App. 3d at 719-20, 941 N.E.2d at 263; see also *Doe*, 289 Ill. App. 3d at 119-20, 681 N.E.2d at 643-44 (plaintiff waived any objections to the trial court's dismissal of her claims of intentional infliction of emotional distress, negligent infliction of emotional distress and fraud, where her amended complaint alleged only breach of fiduciary duty and both complaints were based on the same set of facts, namely, that defendant coerced her into a sexual relationship while he represented her in an action for dissolution of marriage).

¶ 36     Similarly to plaintiff in *Vilardo*, plaintiff in this case realleged essentially the same facts from his first amended complaint in support in his second and third amended complaints. However, in his first amended complaint, plaintiff characterized defendants' conduct as slander *per se*, and in his second and third amended complaints, plaintiff characterized that same conduct as slander *per quod* by each defendant. Plaintiff's final complaint omitted his

-11-

previous claims of slander *per se* and did not refer to those claims in any way. Thus, plaintiff failed to preserve those prior claims in his final complaint.

¶ 37     Plaintiff's reliance on *Abrams v. Watchtower Bible & Tract Society of New York, Inc.*, 306 Ill. App. 3d 1006, 715 N.E.2d 798 (1999), is misplaced. In that case, plaintiff filed several complaints during the course of litigation. *Abrams*, 306 Ill. App. 3d at 1008-10, 715 N.E.2d at 800-01. His second-to-last complaint contained one count of "conspiracy to defame," three counts of defamation, one count of "conspiracy to invade privacy," and one count of "conspiracy" based on a breach of fiduciary duty. *Abrams*, 306 Ill. App. 3d at 1009, 715 N.E.2d at 800-01. Following dismissal of plaintiff's claims of defamation and "conspiracy to invade privacy," plaintiff filed his final complaint, which contained a single count entitled "conspiracy," and alleged the same facts as all of his previous complaints. *Abrams*, 306 Ill. App. 3d at 1009, 715 N.E.2d at 800-01. The court held that plaintiff had abandoned his defamation and invasion of privacy counts contained in his second-to-last complaint "when he failed to reallege or incorporate those allegations in the 'conspiracy' count of his [last] complaint." *Abrams*, 306 Ill. App. 3d at 1014, 715 N.E.2d at 803-04. Plaintiff in this case argues that the holding in that case "implies" that allegations of facts in support of a claim would have been sufficient to preserve that claim, even if the plaintiff does not properly label such a claim. However, the court in *Abrams*, 306 Ill. App. 3d at 1014, 715 N.E.2d at 803-04, did not appear to find that plaintiff could have preserved his claims from a prior complaint by realleging the facts of his defamation and invasion of privacy counts in support of his count for conspiracy, because the court noted that plaintiff did, in fact, reallege the facts from his previous complaint, and nevertheless found that plaintiff abandoned his prior claims by not incorporating them in his final complaint. Similarly, plaintiff in this case realleged the facts from his previous complaint in his second and third amended complaints, but only in support of his claims of slander *per quod* against each doctor. Accordingly, we conclude that plaintiff waived any objection to the trial court's dismissal of his claims of slander *per se* against both defendants and violation of the Medical Studies Act by Dr. Conway.

¶ 38                  2. Slander *Per Quod* by Dr. Painter and Dr. Conway

¶ 39     In his appeal from the orders entered on June 16, 2009, dismissing counts I and III of his third amended complaint, which alleged slander *per quod* by Dr. Painter and Dr. Conway, plaintiff contends that the trial court erred in dismissing those counts because he alleged sufficient facts to sustain a cause of action for slander *per quod* and survive a motion to dismiss.

¶ 40     When reviewing an order granting a motion to dismiss pursuant to section 2-615, this court applies *de novo* review. *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 516, 701 N.E.2d 99, 101 (1998). A statement is considered defamatory "if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10, 607 N.E.2d 201, 206 (1992) (citing Restatement (Second) of Torts § 559 (1977)). Statements may be considered defamatory *per se* or *per quod*. *Id.* Statements are defamatory *per se* when

the defamatory character of the statement is apparent on its face, that is, the statement is so obviously harmful to the plaintiff that damages may be presumed. *Id*. In Illinois, courts have recognized four categories of statements that are considered defamatory *per se*: (1) words that impute commission of a crime; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; and (4) words that prejudice a party, or impute a lack of ability, in his or her trade, profession or business. *Id*.

¶ 41    Conversely, a cause of action for defamation *per quod* may be brought under two sets of circumstances. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 103, 672 N.E.2d 1207, 1221 (1996). First, a claim of defamation *per quod* is appropriate when the defamatory character of the statement is not apparent on its face, and plaintiff must plead and prove extrinsic facts to explain the injurious meaning of the statement. *Id*. Second, a claim of defamation *per quod* is also appropriate when the statement is defamatory on its face, but does not fall within one of the limited categories of statements that are actionable *per se. Id*. Further, our supreme court has recognized that even where a statement does fall within a category of statements that are actionable *per se*, such statements will nevertheless give rise to a claim of defamation *per quod* because such statements are defamatory on their face. *Id*. (noting that although the plaintiff's counts of defamation *per quod* were unnecessary where defendant's statement was actionable *per se*, she did not need to plead extrinsic facts to establish a claim of defamation *per quod*). Plaintiffs pursuing a claim of defamation *per quod* under either category must allege special damages, which are damages to the plaintiff's reputation and pecuniary losses resulting from the defamatory statement. *Bryson*, 174 Ill. 2d at 103-04, 672 N.E.2d at 1221-22; *Becker v. Zellner*, 292 Ill. App. 3d 116, 127, 684 N.E.2d 1378, 1387 (1997); *Barry Harlem Corp. v. Kraff*, 273 Ill. App. 3d 388, 394, 652 N.E.2d 1077, 1082 (1995).

¶ 42    Plaintiff appears to contend, as he did for his *per se* claim, that the statements by Dr. Painter to other doctors and the statement by Dr. Conway within earshot of other doctors were defamatory on their face because they disparaged plaintiff's professional competence. Alternatively, plaintiff contends that even if defendants' statements were not defamatory on their face, he pled extrinsic facts which show those statements implied that plaintiff was no longer a capable surgeon. In addition, plaintiff maintains that he made sufficient allegations pertaining to special damages because he alleged in the complaint that as a result of the statements by Dr. Painter and Dr. Conway, plaintiff lost patient referrals from doctors, including Dr. Goyal, which resulted in a loss of over $800,000 in plaintiff income within six months of the incident.

¶ 43    Defendants first respond plaintiff's claims of defamation *per quod* were properly dismissed because defendants' remarks were statements of opinion and therefore constitutionally protected. As previously mentioned, a statement is considered defamatory on its face if it prejudices a party, or imputes lack of ability, in his trade or profession. *Mittelman v. Witous*, 135 Ill. 2d 220, 238-39, 552 N.E.2d 973, 982 (1989). However, expressions of the speaker's opinion are protected under the first amendment and, therefore, not actionable, even if they are otherwise slanderous. *Moriarty v. Greene*, 315 Ill. App. 3d 225, 236, 732 N.E.2d 730, 741 (2000). That protection is based on the principle enunciated

in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974):

> "Under the first amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition for other ideas. But there is no constitutional value in false statements of fact."

¶ 44　The United States Supreme Court later held, however, that there is no separate first amendment privilege for a statement of opinion, and that a false assertion of fact can be libelous even if couched in terms of an opinion. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990). Accordingly, our supreme court has found that a statement is constitutionally protected under the first amendment only if it cannot be " 'reasonably interpreted as stating actual facts.' " *Bryson*, 174 Ill. 2d at 100, 672 N.E.2d at 1219-20 (quoting *Milkovich*, 497 U.S. at 20). Further, in determining whether a statement consists of facts or opinion, courts consider: (1) whether the statement has a precise and readily understood meaning; (2) whether the statement's literary or social context indicates that it contains facts; and (3) whether the statement is objectionably verified as true or false. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 581-82, 852 N.E.2d 825, 840 (2006).

¶ 45　In *Mittelman*, 135 Ill. 2d at 245-48, 552 N.E.2d at 985-86, our supreme court found that statements made by defendant, who was plaintiff's supervising attorney, were actionable slander *per se*, and not expressions of opinion, where defendant told others that plaintiff's conduct was negligent. Defendant in that case told the firm's board of directors that the firm's waste of time and money in connection with a case was plaintiff's fault, who sat on the statute of limitations defense with knowledge of dispositive adverse authority without attempting to settle or cut the firm's losses. 135 Ill. 2d at 245, 552 N.E.2d at 985. The court found that while the term "fault" was used to express an opinion, the remainder of defendant's statement was factual because it " '[could not] be interpreted as other than *** a charge of professional negligence on plaintiff's part.' " 135 Ill. 2d at 246, 552 N.E.2d at 985 (quoting *Mittelman v. Witous*, 171 Ill. App. 3d 691, 701 (1988)). It reasoned that the statement that plaintiff "sat" on a defense was a statement of fact, because it had the clear meaning, within that context, that plaintiff did nothing but await dismissal of the case, even though he was aware of dispositive adverse authority. *Id*. The court then concluded that defendant's statement, which had the clear implication that the plaintiff committed professional negligence, was factual and, therefore, actionable. 135 Ill. 2d at 248, 552 N.E.2d at 986.

¶ 46　Similarly, in *Bakarat v. Matz*, 271 Ill. App. 3d 662, 671-72, 648 N.E.2d 1033, 1041-42 (1995), this court found that statements made by a consulting physician for a worker's compensation insurance carrier, about a doctor who treated a claimant, were actionable statements of fact, because they directly referred to that doctor's conduct in treating his patients. In that case, the defendant doctor stated to a patient that the plaintiff " 'was not any good as a doctor,' " that his " 'opinion wasn't any good' " and " 'his practice was a joke,' " that defendant had examined patients from plaintiff before and found nothing wrong with them. 271 Ill. App. 3d at 672, 648 N.E.2d at 1042. In finding that those statements were not merely expressions of defendant's opinion, the court noted that those statements imply a factual basis that could be verified, namely, that defendant had previously examined

-14-

plaintiff's patients before. *Id*.

¶ 47 In this case, plaintiff alleged in his complaint that Dr. Painter told several doctors and other medical professionals that plaintiff had negligently and inadvertently cut his patient's artery. He further alleged that Dr. Conway said to plaintiff, in the presence of other doctors and medical professionals, that the plaintiff had negligently cut that patient's artery and that he should expect a letter from a quality review committee regarding that negligent cutting of her artery. As in *Mittelman*, both defendants allegedly stated that plaintiff, a surgeon, was professionally negligent in cutting his patient's artery, which, in that context, compels a clear interpretation that plaintiff committed professional malpractice in severing that patient's artery during her surgery. Additionally, it appears that Dr. Conway implied that plaintiff may be scrutinized by the hospital for his negligent actions. Further, as in *Bakarat*, defendants' alleged statements with regard to plaintiff's negligence contain a factual basis, namely, his cutting the patient's artery, which is a readily verifiable fact. Thus, defendants' statements were factual and, therefore, not constitutionally protected opinions.

¶ 48 Defendants rely on *Rose v. Hollinger International, Inc.*, 383 Ill. App. 3d 8, 17-19, 889 N.E.2d 644, 652-54 (2008), *Hopewell*, 299 Ill. App. 3d at 517-20, 701 N.E.2d at 102-04, and *Aroonsakul v. Shannon*, 279 Ill. App. 3d 345, 352-53, 664 N.E.2d 1094, 1099-1100 (1996), in support of their argument that their alleged statements are nonactionable opinion. However, such reliance is misplaced because while defendant in *Rose*, 383 Ill. App. 3d at 17-19, 889 N.E.2d at 652-54, stated that plaintiff had damaged his prior employer's finances, and defendant in *Hopewell*, 299 Ill. App. 3d at 517-20, 701 N.E.2d at 102-04, stated that plaintiff was " 'fired because of incompetence,' " in neither of those cases, a defendant alleged defamatory facts as to how the plaintiff damaged a company's finances, or what actions taken by plaintiff amounted to incompetence. In this case, however, as in *Mittelman* and *Bakarat*, defendants' statements contained the factual grounds for their charge that plaintiff was negligent, namely, cutting his patient's artery. Further, while the court in *Aroonsakul*, 279 Ill. App. 3d at 352-53, 664 N.E.2d at 1099-1100, stated that a doctor's criticism of another doctor's method of treatment is a protected opinion, the defendant in that case had not charged the plaintiff with professional negligence but merely disagreed with the plaintiff's method.

¶ 49 Defendants further argue that, even if their alleged statements were not protected opinions, those statements are not actionable because they could be innocently construed to mean only that plaintiff did not perform well during that particular patient's surgery. We first note that our supreme court has held that the innocent construction rule applies only to actions for defamation *per se*. *Tuite v. Corbitt*, 224 Ill. 2d 490, 504, 866 N.E.2d 114, 122 (2006) (citing *Mittelman*, 135 Ill. 2d at 232, 552 N.E.2d at 979). That court reasoned that the rule, which favors defendants, imposes a tougher standard on plaintiffs and is, therefore, warranted only where damages are presumed. *Id*. Accordingly, the innocent construction rule cannot be used to shield defendants from liability with respect to plaintiff's claims of slander *per quod*.

¶ 50 Furthermore, even assuming, *arguendo*, that the innocent construction rule were applicable to plaintiff's *per quod* counts, defendants would fare no better. Pursuant to that rule, an alleged statement that is defamatory *per se* is not actionable if it is reasonably

-15-

capable of innocent construction. *Green v. Rogers*, 234 Ill. 2d 478, 499, 917 N.E.2d 450, 463 (2009). " '[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may be reasonably innocently interpreted or reasonably be interpreted as referring to someone other than plaintiff it cannot be actionable *per se*.' " *Mittelman*, 135 Ill. 2d at 232, 552 N.E.2d at 979 (quoting *Chapski v. Copley Press*, 92 Ill. 2d 344, 352, 442 N.E.2d 195, 199 (1982)). In *Mittelman*, 135 Ill. 2d at 247-48, 552 N.E.2d at 986, where, as noted above, an attorney's supervisor stated that he was at fault for wasting his firm's money by "sitting" on a defense and failing to attempt to cut the firm's losses, could not be innocently construed as a mere evaluation because it was clear that plaintiff was accused of negligence. The court noted that attributing fault to that attorney was not merely a statement that he chose a strategy that went awry. *Id.*

¶ 51 Similarly in this case, plaintiff alleged that Dr. Painter and Dr. Conway stated in the presence of other doctors at the hospital where plaintiff practices that plaintiff *negligently* and inadvertently cut his patient's artery. Similarly to *Mittelman*, those alleged statements charged plaintiff with professional negligence and cannot be reasonably construed to imply that plaintiff made an innocent mistake during that surgery.

¶ 52 Furthermore, defendants argue that plaintiff's counts of defamation *per quod* were properly dismissed because he failed to plead extrinsic facts to explain why those statements were defamatory and merely repeated the factual allegations that he had previously made in support of his claim of slander *per se*. We disagree.

¶ 53 Although plaintiff has forfeited his claims of defamation *per se* against defendant, he may still sustain a claim of defamation *per quod* that is based on statements that are defamatory on their face and do not, therefore, need extrinsic facts to show their defamatory character. As noted above, even where a defamatory statement falls within a category of defamation *per se*, it will also suffice to give rise to a claim of defamation *per quod*. See *Bryson*, 174 Ill. 2d at 103, 672 N.E.2d at 1221.

¶ 54 In fact, it is well established that a plaintiff in an action for defamation *per quod* does not need to plead extrinsic facts where defendant's statement is defamatory on its face. *Bryson*, 174 Ill. 2d at 103-04, 672 N.E.2d at 1221-22. In that case, the court found that the plaintiff did not need to plead extrinsic facts to survive dismissal of her claim of defamation *per quod* because defendant's statement that plaintiff was a "slut" was defamatory on its face. *Id.* In doing so, the court noted that since defendant's statement also fell within one of the categories of defamation *per se*, its defamatory character was apparent on its face, which obviated the need for facts that show why that statement was defamatory. *Bryson*, 174 Ill. 2d at 104, 672 N.E.2d at 1222.

¶ 55 In this case, we agree with plaintiff that the statements allegedly made by each of the defendants are defamatory on their face. Our supreme court in *Mittelman*, 135 Ill. 2d at 248, 552 N.E.2d at 986, found that, aside from being a statement of fact, defendant's statement that plaintiff sat on a defense and failed to cut the firm's losses was defamatory on its face. It held that such a statement which charged plaintiff with such negligence was actionable as defamation on its face, because it would prejudice an attorney in his profession. *Id.* Similarly,

-16-

in *Bakarat*, 271 Ill. App. 3d at 672, 648 N.E.2d at 1042, the court found that the statements that a doctor was " 'not any good,' " that his opinions were not " 'any good' " and his practice was a joke were defamatory on their face. In doing so, the court held that the obvious meaning of those statements was that the plaintiff was professionally incompetent and had mistreated previous patients. *Id.*

¶ 56    In this case, as explained above, defendants' statements that plaintiff negligently severed his patient's artery had the clear meaning that he committed professional malpractice. As in *Mittelman* and *Bakarat*, not only are those statements of fact, but they are defamatory on their face. Accordingly, he did not need to allege extrinsic facts to show the defamatory nature of defendants' statement in order to sustain a claim of defamation *per quod*.

¶ 57    Defendants' reliance on *Dunlap v. Alcuin Montessori School*, 298 Ill. App. 3d 329, 339, 698 N.E.2d 574, 581 (1998), and *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 411-15, 667 N.E.2d 1296, 1301-03 (1996), for the proposition that their statements were not defamatory on their face is unpersuasive. In each case, the court found that statements by each plaintiff's former employer that plaintiff had not performed her duties satisfactorily (*Dunlap*, 298 Ill. App. 3d at 339, 698 N.E.2d at 581), or that plaintiff did not follow up on his assignments (*Anderson*, 172 Ill. App. 3d at 411-15, 667 N.E.2d at 1301-03), were not defamatory on their face because they could each be reasonably construed to mean that each plaintiff did not perform well in that particular job setting, and they were not a comment on his or her ability to perform in future positions. In contrast, according to the complaint in this case, defendants did not merely state that plaintiff's performance was unsatisfactory, but charged him with professional negligence as a surgeon, which is a statement that would prejudice plaintiff in his profession and is, therefore, defamatory in its face. *Mittelman*, 135 Ill. 2d at 248, 552 N.E.2d at 986.

¶ 58    Having concluded that defendants' statements as alleged in plaintiff's final complaint, are defamatory on their face, we need not determine whether plaintiff has alleged sufficient extrinsic facts to show those statements' defamatory meaning.

¶ 59    Defendants contend, however, that regardless of whether their statements were defamatory on their face, the circuit court properly dismissed plaintiff's complaint because plaintiff did not sufficiently allege special damages. They first appear to argue that special damages were not sufficiently pled because plaintiff's complaint did not identify potential patients who did not consult with plaintiff as a result of defendants' statements. Defendants further claim that the complaint contained no allegations that Dr. Goyal's or any other physician's failure to refer patients to plaintiff was caused by any statements made by Dr. Painter or by Dr. Conway.

¶ 60    As noted above, even where a claim of defamation *per quod* is based on statements that are defamatory on their face, plaintiff must allege special damages, which are pecuniary losses and damage to the plaintiff's reputation resulting from defendants' defamatory statements. *Bryson*, 174 Ill. 2d at 103-04, 672 N.E.2d at 1221-22. There is no precise definition for what will constitute special damages to sustain a cause of action of defamation *per quod*, but it is well established that general allegations, such as damage to the plaintiff's reputation, health, economic loss and emotional distress, are insufficient to sustain such a

cause of action. *Salamone v. Hollinger International, Inc.*, 347 Ill. App. 3d 837, 842-43, 807 N.E.2d 1086, 1091 (2004); *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 694-95, 742 N.E.2d 425, 433-34 (2000); *Taradash v. Adelet/Scott-Fetzer Co.*, 260 Ill. App. 3d 313, 318, 628 N.E.2d 884, 888 (1993). However, a specific allegation that a third party has stopped doing business with plaintiff as a result of defendant's statements is a sufficient allegation of special damages. See *Becker*, 292 Ill. App. 3d at 127, 684 N.E.2d at 1387. Likewise, a plaintiff sufficiently pleads special damages by explicitly stating the dollar amount of his loss of revenue which resulted from the loss of customers due to defendants' statements. See *Windsor Lake, Inc. v. WROK*, 94 Ill. App. 2d 403, 408-09, 236 N.E.2d 913, 916-17 (1968).

¶ 61    In *Becker*, 292 Ill. App. 3d at 119, 684 N.E.2d at 1381-82, plaintiffs were paralegals who assisted defendants, attorneys, in their representation of a third party named Frank Lyons. Plaintiffs alleged in their complaint that when a friend of Lyons called defendants to obtain plaintiffs' telephone number, one of defendants told her that plaintiffs were "devious" and charged $45,000 for five pages of worthless memorandum. *Id*. As a result, Lyons did not hire plaintiffs to assist in the preparation of his case. *Id*. The court found that plaintiffs sufficiently alleged special damages where they claimed that defendant's defamatory statement to a close friend of a third party caused that party to stop doing business with plaintiffs. *Becker*, 292 Ill. App. 3d at 127-28, 684 N.E.2d at 1387. Furthermore, in *Windsor Lake,* 94 Ill. App. 2d at 408-09, 236 N.E.2d at 916-17, the court found that plaintiff had sufficiently pled special damages where it alleged that defendant's broadcasted statements that its beach was unclean and unsanitary resulted in a profit loss due to reduction of gate attendance and concession receipts in the amount of $15,000 in 1964 and $10,000 in 1965. See also *Yashon v. Aetna Life & Casualty*, No. 75AP-199 (Ohio Ct. App. Dec. 9, 1975) (an Ohio case wherein, in an unpublished opinion, the court found that the loss of business through referrals as a result of defendant's defamatory letter constituted a sufficient allegation of special damages). The analysis in *Imperial Apparel, Ltd. v. Cosmo's Design Direct, Inc.*, 367 Ill. App. 3d 48, 853 N.E.2d 770 (2006), *rev'd on other grounds*, 227 Ill. 2d 381, 882 N.E.2d 1011 (2008), is highly instructive. In that case, where the defendant had defamatory material about plaintiff's business published in a newspaper, the court found that the plaintiff sufficiently alleged special damages by stating in its complaint that its sales decreased from the month preceding defendant's defamatory statement and as compared to the same period in the prior year. *Imperial Apparel*, 367 Ill. App. 3d at 59, 853 N.E.2d at 780-81. In doing so, the court stated that "[w]here *** there has been wide dissemination of the disparaging material to persons unknown and the plaintiff is in the business of offering goods for sale to the general public, it is obviously impossible for such a plaintiff to specifically identify the potential customers who, as a result of the defamatory material, did not purchase its goods." *Id*. "While we have no quarrel with the proposition that a plaintiff in a *per quod* action must plead special damages with specificity, we nevertheless believe that a plaintiff is only obligated to be as specific as it is reasonable to require." *Id*.

¶ 62    In this case, plaintiff alleged that as a result of defendants' statements, plaintiff suffered a precipitous drop in the number of patients referred by other doctors by approximately 25%, and that his income dropped in the amount of $861,506 from 2006 to 2007. Similarly to plaintiff in *Becker*, plaintiff in this case alleged that at least one third party, namely, Dr.

-18-

Goyal, stopped referring patients to plaintiff as a result of statements made by Dr. Painter to other doctors and the statement made by Dr. Conway in the presence of other doctors. While Dr. Goyal is not a patient or client of plaintiff's, his referrals had the potential of causing patients to seek plaintiff's services, and plaintiff alleged that the number of patients referred to him by other doctors did, in fact, drop by 25% as a result of defendants' statements. In fact, similarly to plaintiff in *Windsor Lake*, plaintiff specifically alleged a decrease in his income of $861,506 after defendants' statements were made. Further, as in *Imperial*, defendants in this case made defamatory statements about plaintiff that became disseminated, and plaintiff alleged that as a result, his income declined as compared to the year before defendants made their statements.

¶ 63        Defendants' reliance on *Barry Harlem Corp.*, 273 Ill. App. 3d at 395, 652 N.E.2d at 382-83, and *Taradash*, 260 Ill. App. 3d at 314-18, 628 N.E.2d at 885-88, is misplaced. Unlike plaintiff in this case, plaintiffs in *Barry Harlem Corp.* and in *Taradash* did not identify any clients or patients who had stopped doing business with those plaintiffs and did not specify any actual financial loss suffered as a result of losing prospective clients. See *Barry Harlem Corp.*, 273 Ill. App. 3d at 395, 652 N.E.2d at 382-83; *Taradash*, 260 Ill. App. 3d at 314-18, 628 N.E.2d at 885-88.

¶ 64        Further, defendants contend that the complaint insufficiently alleged special damages because it did not allege that the doctors who stopped referring patients to him were aware of those statements made by defendants. However, plaintiff alleged that once the statements made by Dr. Painter and Dr. Conway became widely disseminated among doctors with privileges at Northwest Community Hospital, several doctors, including Dr. Goyal, "would not refer patients that [they] otherwise would have referred *but for* the allegations that [plaintiff] had negligently severed a patient's artery." (Emphasis added.) Therefore, contrary to defendants' assertion, plaintiff's complaint specifically alleged that defendants' statements were the very reason for Dr. Goyal's failure to refer patients to plaintiff.

¶ 65        Defendants, nevertheless, maintain that plaintiff did not sufficiently allege special damages because there was no allegation in the complaint that Dr. Goyal, or any other doctor who stopped referring patients to plaintiff, heard defendants' statements directly from them, or that either Dr. Painter or Dr. Conway authorized others to repeat his statements to those physicians.

¶ 66        We first note, however, that where a plaintiff alleges that he lost the business generated by third parties as a result of the dissemination of the defamation, courts of this state have not required plaintiff to specify how those parties became aware of the defamatory statement, or how they interpreted that statement, in order to allege special damages. In *Halpern v. News-Sun Broadcasting Co.*, 53 Ill. App. 3d 644, 646-47, 368 N.E.2d 1062, 1064-65 (1977), defendant, a newspaper, published several defamatory articles against plaintiff, a nursing home. The court noted that plaintiff sufficiently alleged special damages simply by stating that it had lost income as a result of certain patients leaving the home and others removing their applications. *Halpern*, 53 Ill. App. 3d at 653, 368 N.E.2d at 1068. In doing so, the court did not appear to consider whether plaintiff alleged that any of those patients who left the nursing home had, in fact, read defendant's article or whether they obtained that information from other republished sources. *Id*. Similarly, in *Windsor Lake*, 94 Ill. App. 2d at 408-09, 236

-19-

N.E.2d at 916-17, where defamatory statements were published by a radio station defendant, the court found that special damages had been sufficiently alleged without specifically inquiring as to whether any of plaintiff's lost customers had actually heard those statements from defendant.

¶ 67 Defendants, however, rely on *Clifford v. Cochrane*, 10 Ill. App. 570, 576 (1882), an appellate opinion from the nineteenth century, which appears to be the only Illinois opinion pertaining to this issue, to support their contention that plaintiff's complaint was insufficient because it failed to allege that Dr. Goyal, or any other doctor who stopped referring patients to him, heard the statements directly from defendants. In *Clifford*, 10 Ill. App. at 576, the court found that plaintiff failed to sufficiently allege special damages because the only damages that he suffered were a result of the repetition of defendant's statement by a third party without defendant's authorization. In that case, the court held that plaintiff had not sufficiently pled facts to recover special damages, where defendant authorized the republication of a defamatory statement in a Chicago newspaper, which was later republished by a San Francisco newspaper, and it was only as a result of that second republication that plaintiff lost his job. *Id*. at 576-77. While the court, in its *dictum*, notes that the republication by the San Francisco newspaper was not a "natural and proximate consequence" of defendant's statement, it based its holding on the fact that the repetition had not been authorized by the defendant. *Id*.

¶ 68 We note, however, that *Clifford* was decided in 1882 in an appellate court opinion, but since that time, no decisions have emanated from our supreme court, or for that matter, from any other state courts, on that issue. While there has been one federal case interpreting our state law, by its own reasoning, that federal decision had to follow *Clifford* under the doctrine of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), since *Clifford* was the only state decision on that subject. See *Oberman v. Dun & Bradstreet, Inc.*, 586 F.2d 1173, 1175 (7th Cir. 1978). Unlike the federal court, this court is not bound to follow the decision in *Clifford*, since we are not bound by *stare decisis* or otherwise to follow a decision entered by another appellate court. *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440, 892 N.E.2d 994, 1007 (2008).

¶ 69 Furthermore, since *Clifford* was decided, the majority of jurisdictions have adopted a more liberal standard, under which a publisher is responsible not only for damages caused by authorized repetitions of his statement, but also for those that were reasonably foreseeable, or the "natural and probable consequences" of that statement. See *Oberman*, 586 F.2d at 1175 (recognizing that more modern decisions from other states have abandoned the old rule in favor of the "natural and probable consequence" test); Nathaniel S. Boyer, *Defamation Damages for Unauthorized Republication in the Internet Era*, 27-Mar Comm. Law. 7 (2011). The modern standard has been recognized by the Restatement (Second) of Torts § 576 (1977), which states that "[t]he publication of a libel or slander is a legal cause of any special harm resulting from its repetition by a third person if, but only if, *** (c) the repetition was reasonably to be expected." Jurisdictions that have adopted the foreseeability test include Massachusetts (*Murphy v. Boston Herald, Inc.*, 865 N.E.2d 746, 763-64 (Mass. 2007)), California (*Shively v. Bozanich*, 80 P.3d 676, 683 (Cal. 2003)), Alabama (*Barnette v. Wilson*, 706 So. 2d 1164, 1166 (Ala. 1997)), Texas (*Stephan v. Baylor Medical Center at Garland*,

20 S.W.3d 880, 889 (Tex. App. 2000)), and Michigan (*Tumbarella v. Kroger Co.*, 271 N.W.2d 284, 290 (Mich. Ct. App. 1978)). While there are jurisdictions that still adhere by the rule that there is no liability for unauthorized republication, such as New York (*Geraci v. Probst*, 938 N.E.2d 917 (N.Y. 2010)) and Missouri (*Pulliam v. Bond*, 406 S.W.2d 635, 643 (Mo. 1966)), that is now the minority view.

¶ 70    The older standard, under which there was no liability without authorization, was apparently based on the principle that a person who makes a defamatory statement should not be liable for its repetition by independent actors over whom the first publisher has no control, and the liability for any damages caused by those repetitions should be found only in the republisher. *Geraci*, 938 N.E.2d at 921. That rule was also designed to avoid holding the original defamer perpetually for a single act, since in Illinois, each repetition would cause the statute of limitations to start running anew. *Oberman*, 586 F.2d at 1175.

¶ 71    On the other hand, the more modern rule is based on the principle that one who makes a defamatory statement should be held liable for the reasonably foreseeable consequences of his actions, namely, when he should have known that there was an unreasonable risk that his statement would be republished. For instance, the court in *Barnette*, 706 So. 2d at 1166-67, reasoned, in support of its decision, that "[a]n actor is presumed to intend the logical outcome of his actions," and a person who makes a defamatory statement is liable for its repetition if there were circumstances at the time of his original statement that "might reasonably lead him to expect [such] repetition." (Internal quotation marks omitted.) Similarly, in *Stephan*, 20 S.W.3d at 889, the court stated that "if a reasonable person would recognize that his actions create an unreasonable risk that the defamatory matter will be communicated to other parties, his conduct becomes a negligent publication to those parties with the same consequences as a direct and intentional communication."

¶ 72    Moreover, as the dissenting justice in the New York case of *Geraci* noted, the reasoning in the majority in adhering to the old rule presupposes that the plaintiff has a realistic chance to recover against the party who repeated the statement, which is no longer true where a newspaper republishes a defamatory statement about a public official since the Supreme Court held, in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), that the first amendment prohibits recovery in those instances without proof that the statement was made with knowledge that it was false or with reckless disregard for the truth. See *Geraci*, 938 N.E.2d at 924 (Smith, J., dissenting). As stated in the dissent, the older rule was devised for a different world of defamation, while the rule from the Restatement reflects current "ordinary principles of tort law," which imputes liability in the first publisher, not for any repetition by third parties, but for those which were reasonably foreseeable at the time of the first statement. *Id*. Further, as observed by the dissenting justice in *Oberman*, 586 F.2d at 1177 (Swygert, C.J., dissenting), the more modern rule would not expose litigants to perpetual liability because the original publisher's liability for damages caused by repetitions by others would be cut off when the republication can no longer be said to have been reasonably foreseeable.

¶ 73    In fact, the national trend toward holding the original defamer liable for reasonably foreseeable publications is parallel to the shift that occurred with respect to general tort liability, whereby a defendant can, under current law, be more readily liable for damages

-21-

caused by foreseeable human intervening actions. See, *e.g.*, *Kush v. City of Buffalo*, 449 N.E.2d 725, 729 (1986) ("an intervening criminal act will generally sever the liability of the tort-feasor," but "[t]hat doctrine has no application when the intentional or criminal intervention of a third party or parties is reasonably foreseeable"); see also *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 224, 531 N.E.2d 1358, 1368 (1988). As a concurring justice in *Barnette* stated, quoting a leading torts treatise, " 'there has been the same broadening of "proximate cause" as in other fields of liability, and the prevailing view now appears to be that there is liability for damages due to such a repetition when it was authorized or intended, or when the circumstances were such that it might reasonably have been anticipated.' " (Emphasis omitted.) *Barnette*, 706 So. 2d at 1168 (Cook, J., concurring in part and dissenting in part) (quoting Prosser and Keeton on Torts § 112, at 795 (W. Page Keeton *et al.* eds., 5th ed. 1984)).

¶ 74 Since, as noted above, this court is not bound by the early and singular decision in *Clifford*, we are free to follow the modern rule enunciated in the Restatement, under which a defamer is liable for damages caused by repetitions that were reasonably foreseeable, or the natural and probable consequence of his original statement. In fact, even in *Oberman*, 586 F.2d at 1176, the dissent urges that federal courts are not bound by *Erie* to follow a decision by an appellate court and, accordingly, adopts a more modern rule. Moreover, there is some indication that but for *Erie*, the majority also have been so inclined, insofar as it determined that the same result reached by the majority under the old rule would also follow under the modern rule. See *Oberman*, 586 F.2d at 1175-76. Furthermore, there is some element of indecision reflected in *Clifford*, 10 Ill. App. at 576, where the court did not rely entirely on the prevalence of the old rule, noting in its *dictum* that aside from the fact that the republication in that case had not been authorized, it could not be regarded as the "necessary, or the natural and proximate consequence" of the first publication.

¶ 75 There can be little doubt that under the majority Restatement rule, the pleadings in the plaintiff's complaint in this case are more than sufficient to allege entitlement to special damages as required to state a cause of action for defamation *per quod*. With respect to the count against Dr. Painter (count I), plaintiff's complaint alleged that Dr. Painter stated to several doctors, including Dr. McGillan and Dr. Glass, that plaintiff had negligently and inadvertently severed his patient's artery. According to the complaint, Dr. Painter made that statement in the presence of other doctors and medical personnel at the hospital where plaintiff practices, and that statement subsequently became widespread throughout the hospital. With respect to the count against Dr. Conway (count III), plaintiff alleged that Dr. Conway stated to plaintiff that he had negligently cut his patient's artery and that he should expect a letter from the quality review committee with regard to that incident. The complaint alleged that Dr. Conway's statements were made in a common hallway at the hospital where plaintiff practices, in the presence of other doctors and other medical personnel, and again claimed that the statement became disseminated throughout the hospital. With respect to both counts, those allegations allow the conclusion that the natural and probable consequences of each doctor's statements was that it would be repeated to other doctors in that hospital, such as Dr. Goyal, who, according to the complaint, stopped referring patients to plaintiff after defendants made those statements. According to the complaint, both defendants procaimed

that plaintiff had been negligent during a surgery in the presence of other doctors and in a manner that did not imply that the matter was confidential. Further, the doctors who heard the statements reasonably would have been concerned about plaintiff's competence, such that it was reasonably foreseeable to each defendant that those doctors would repeat their statements to other doctors in that hospital. Thus, although plaintiff did not state in his complaint that Dr. Goyal heard Dr. Painter's statement directly from him, or that Dr. Goyal was one of the doctors within earshot of Dr. Conway when he told plaintiff that he should be expecting a letter, the absence of those allegations is not fatal to plaintiff's complaint, which has otherwise adequately alleged special damages.

¶ 76     For the foregoing reasons, we reverse and remand the judgment of the circuit court of Cook County with respect to the orders entered on June 16, 2009, dismissing counts I and III of plaintiff's final complaint. However, we find that, for the reasons discussed, we are without jurisdiction to reach the merits of plaintiff's appeal with respect to the orders entered on October 29, 2008, and find that even if we did not lack jurisdiction with respect to them, those issues would have been waived because they pertain to earlier pleadings that have been subsequently amended.

¶ 77     Dismissed in part and reversed in part; cause remanded.